# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CA-01410-SCT

*JOHN W. WHITTEN, III*

*v.*

*RANDY COX, TOD LOGAN*

*AND PHILIP SPINOSA*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/28/1998 |
| TRIAL JUDGE: | HON. GEORGE C. CARLSON, JR. |
| COURT FROM WHICH APPEALED: | TALLAHATCHIE COUNTY |
| | CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | WILLIAM LISTON |
| | JOHN W. WHITTEN, JR. |
| | WILLIAM JOSEPH REID |
| ATTORNEY FOR APPELLEES: | RONALD W. LEWIS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 7/27/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BANKS, P.J., WALLER AND DIAZ, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. This case comes on appeal from the Circuit Court of the Second Judicial District of Tallahatchie County, Mississippi. Plaintiffs Randy Cox, Tod Logan and Philip Spinosa filed a civil action for damages against John W. Whitten, III, for assault, battery, and false imprisonment. Whitten filed a counterclaim for trespass and several other torts. He voluntarily dismissed all of the tort claims with the exception of the trespass counterclaim, which was presented to the jury. The jury returned a verdict for all three plaintiffs on the assault, battery, and false imprisonment claims and awarded compensatory damages as follows: Cox, $50,000; Logan, $30,000; and Spinoza, $30,000. Though the issue of punitive damages was also submitted to the jury, the three plaintiffs were each awarded $0.00 punitive damages. The jury found in

favor of Whitten on his counterclaim for trespass, but declined to award him any damages, awarding $0.00 on this claim. The circuit court entered judgment accordingly and denied Whitten's post-trial motion for a J.N.O.V. or a new trial. Whitten appeals to this Court raising the following issues:

**I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT WHITTEN'S MOTION FOR A DIRECTED VERDICT AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT BECAUSE THE PLAINTIFFS' PROOF WAS INSUFFICIENT TO ESTABLISH THAT THEY SUFFERED MENTAL ANGUISH AND EMOTIONAL DISTRESS, WHICH WERE ESSENTIAL ELEMENTS OF THEIR CLAIMS OF ASSAULT AND BATTERY AND FALSE IMPRISONMENT.**

**II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ALLOWING THE ADMISSION OF EVIDENCE OF WHITTEN'S ALLEGED STATEMENT CONTAINING THE WORD "NIGGER," AND DENYING WHITTEN'S MOTION FOR A NEW TRIAL.**

**III. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING WHITTEN'S MOTION FOR REMITTITUR.**

**IV. WHETHER THE TRIAL COURT ERRED IN ALLOWING CERTAIN JURY INSTRUCTIONS.**

**V. SHOULD THE TRIAL COURT HAVE ENTERED AN ADDITUR OR ORDERED A NEW TRIAL BASED ON THE JURY'S AWARD OF $0.00 FOR WHITTEN'S TRESPASS CLAIM?**

## STATEMENT OF THE FACTS

¶2. On Sunday afternoon, March 19, 1995, Cox, Spinosa and Logan drove a pickup truck onto a tract of land which was being farmed and leased by Cox's brother. Cox claims he was inspecting the condition of the land at his brother's request to see whether it was ready to be worked. They attempted to access this land through a dirt road which crossed Whitten's land and then alongside an airstrip on property adjacent to Whitten's land. Whitten did not own the land that the airstrip was on, but he had built the airstrip with the permission of the owner of that land and was permitted to use it as such. Whitten also owned a camp and a firing range on his own land adjacent to the airstrip. The plaintiffs drove past the Whitten camp and drove the pickup down the center of the grass runway toward the field that Cox was going to inspect. Whitten saw the truck driving down the runway and ran after the truck, shouting for it to stop. When the truck did not stop Whitten drew his side arm, a .45 caliber semi-automatic pistol, and fired several shots. Whitten claims that he fired the shots into the air and at an angle away from the pickup in order to get the attention of the driver. Cox claims Whitten was shooting at the truck and that he heard a bullet pass by the open window. The truck then turned and came back towards the Whitten camp, this time along the side of the runway. Whitten placed himself in front of the truck and ordered the driver to stop the truck.

¶3. At this point, the facts become starkly disputed. Whitten claims that the driver of the truck refused to stop, forcing him to jump to one side, and hitting him with the side view mirror. The plaintiffs claim that the truck was slowing down, at idle speed, and that the driver was pumping the brakes, attempting to stop. The plaintiffs' recollection was that Whitten slipped in the mud and then grabbed onto the side mirror to support

himself. It is undisputed that at this time Whitten shot out one of the back tires on the pickup. Whitten then ordered the plaintiffs out of the truck.

¶4. Again the facts are disputed. The plaintiffs claim that Whitten pointed the cocked pistol directly at them, waving it in their faces, shouting, cursing, and ordering them out of the truck and onto the ground. Cox claims that Whitten pressed the barrel of the gun to Cox's temple and told Cox he ought to kill him or "kick his fucking face in" for being on the runway. Whitten denies pointing the gun at anyone, though it is undisputed that he was armed, that his friends standing around were armed with loaded assault rifles and that Whitten ordered the plaintiffs to kneel on the ground. Once they were out of the truck, Whitten informed all three that they were under arrest for trespass. One of Whitten's sons who was present brought some handcuffs from a nearby vehicle. It is undisputed that Whitten ordered one of the other men to handcuff Cox prior to taking him to a building at his camp. Cox claims that Whitten asked the other two plaintiffs whether they thought Cox could swim in the nearby Buzzard Bayou with those handcuffs on. Cox also claims that when he rose to his knees, Whitten pulled the bill of his cap down over his eyes and knocked his sunglasses off. Once the three plaintiffs were escorted back to Whitten's camp, Whitten unsuccessfully tried to telephone the Sheriff. Whitten then recognized Cox as the brother of the person who leased some farmland on the neighboring property where the airstrip was located. At this point Cox recalled that Whitten began to calm down and discuss how to resolve the situation. Cox claims that Whitten said, "I could go ahead and pursue a legal matter for this, even put it in front of that nigger judge right there in Sumner; . . . but that nothing would happen to him [Whitten]; . . . but . . . be damned sure [nothing] would come of it; . . . [Cox] would not get anything; . . . or [nothing] good would come of it." Whitten denies ever mentioning the word "nigger." He claims that it was Cox, not he, who referred to the judge that way.[1]

## DISCUSSION

### I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT WHITTEN'S MOTION FOR A DIRECTED VERDICT AND MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT BECAUSE THE PLAINTIFFS' PROOF WAS INSUFFICIENT TO ESTABLISH THAT THEY SUFFERED MENTAL ANGUISH AND EMOTIONAL DISTRESS WHICH WERE ESSENTIAL ELEMENTS OF THEIR CLAIMS OF ASSAULT AND BATTERY AND FALSE IMPRISONMENT.

¶5. Our standard of reviewing a denial of a motion for judgment notwithstanding the verdict and a peremptory instruction are the same. The standards of review for a denial of a judgment notwithstanding the verdict and a directed verdict are also identical. Under this standard, this Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand, if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required. These standards of review, however, are predicated on the fact that the trial judge applied the correct law. This Court will reverse a trial judge's denial of a request for new trial only when such denial amounts to an abuse of that judge's discretion. *Sentinel Indus. Contracting Corp. v. Kimmins Indus. Serv. Corp.*, 743 So. 2d 954, 960-61 (Miss. 1999) (citations omitted).

¶6. Whitten argues that the plaintiffs "failed miserably" to provide any evidence of damages or injury in relation to their claims for assault, battery and false imprisonment, and as such he should have received a directed verdict. Assault, battery, and false imprisonment are intentional torts. Miss. Code Ann. § 15-1-35 (1995); *City of Mound Bayou v. Johnson*, 562 So. 2d 1212, 1220 (Miss. 1990).

## Assault and Battery Claims

¶7. An assault occurs where a person "(1) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (2) the other is thereby put in such imminent apprehension." *Webb v. Jackson*, 583 So.2d 946, 950-51 (Miss. 1991) (citing Restatement (Second) of Torts § 63 (1965)). A battery goes one step beyond an assault in that a harmful contact actually occurs. A defense to the charge of an assault or battery is that the person was acting in self-defense. In such a situation, he may use reasonable force, not intended or likely to cause death or serious bodily harm, to defend himself against unprivileged harmful or offensive contact or other bodily harm which he reasonably believes that another is about to inflict intentionally upon him. *Id.*

¶8. Whitten does not argue that he was acting in self-defense. Instead, he argues that he was conducting a valid citizen's arrest. The initial issue to be discussed must therefore be whether a valid citizen's arrest was made by Whitten, and whether the arrest was made in accordance with the law. This issue also has a bearing on the merit of the plaintiffs' false imprisonment claims.

¶9. In Mississippi, a private citizen may arrest any person without a warrant for a misdemeanor offense which has been committed, or for a breach of the peace attempted or threatened in his presence. Miss. Code Ann. § 99-3-7 (Supp. 1999). The arrest must be made in accordance with the law, but there will be no liability for a legal arrest, notwithstanding it may appear that the party arrested was innocent of any offense. Miss. Code Ann. § 99-3-23 (1994).

¶10. The plaintiffs were suspected of misdemeanor trespass. They were unarmed. Whitten fired several shots from his .45 caliber pistol, and shot out a tire on the truck that they were driving. He forced them out of the truck and demanded them to get on their knees on the ground. He and several other armed men then took the plaintiffs to a building, having handcuffed and threatened one of them. One of the armed men accompanying Whitten, a Mr. Valley, is now a police officer. Salley testified that Whitten used profanity, was screaming, and that he was shocked by Whitten's behavior. Valley also testified that the plaintiffs did not attempt to run over Whitten with their truck, that they showed no signs of aggression and that the only person being aggressive was Whitten. Whitten admitted in hindsight that he overreacted.

¶11. If the force used in the arrest and detention of a suspected misdemeanant is unreasonable and excessive, this may render the detention and arrest invalid. Whether the manner of arrest renders an arrest illegal is a jury question. *State ex rel. Smith v. Broom*, 58 So. 2d 32, 33 (Miss. 1952). This Court has held that the use of firearms by a police officer is not justified except to protect himself from reasonably apparent bodily harm or death at the hands of the suspect. *Holland v. Martin*, 214 Miss. 1, 58 So. 2d 62 (1952). Citizens are held to the same standard. The occupants of the truck did not at any time threaten Whitten or show any signs of doing so. None of them were armed. Whitten placed himself in front of the truck; no one tried to run over him. Whitten fired his weapon several times. It is undisputed that he shot out one of the tires while the plaintiffs were still in the truck. Whitten testified that at the time he shot out the tire there was no threat whatsoever being posed to him. A reasonable juror could certainly have found that Whitten's use of force was unreasonable and excessive under the circumstances. An error in marksmanship

could have killed or wounded one of the occupants of the truck or one of the bystanders. Whitten was not in fear of life or limb. The force Whitten used in the arrest and detention of the plaintiffs was unreasonable and excessive, rendering the arrest and detention invalid. There is testimony and evidence in the record from which a reasonable jury could have found that the elements of assault and battery were met. Assault requires (1) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (2) the other is thereby put in such imminent apprehension. Shooting out the tire of the truck which was still occupied by the plaintiffs was certainly a harmful or offensive contact, as was removing the occupants and forcing them to the ground. Whitten also handcuffed Cox, pulled his baseball cap over his eyes and knocking off his sunglasses. Thus, the additional "harmful contact" requirement to establish battery was met. Viewing this evidence in the light most favorable to the plaintiffs and giving them the benefit of every reasonable inference which may reasonably be drawn from the evidence, there is substantial evidence in the record which supports the jury's findings of assault and battery.

### False imprisonment claims

¶12. False imprisonment is an intentional tort comprised of two elements: (1) detention of the plaintiff; and (2) that such a detention was unlawful. ***Wallace v. Thornton***, 672 So. 2d 724, 727 (Miss. 1996). The second element turns on whether, looking at the totality of the circumstances, the actions of the defendant were "objectively reasonable in their nature, purpose, extent and duration." ***Thornhill v. Wilson,*** 504 So. 2d 1205, 1208 (Miss. 1987). The question to be answered by the jury and the trial court was whether Whitten's actions in attempting to arrest the plaintiffs were objectively reasonable in nature, purpose, extent and duration when viewed in the totality of the circumstances. It is the reasonableness of Whitten's actions, not his intent that matters. *See **Wallace***, 672 So. 2d at 727. The initial arrest for misdemeanor trespass was unlawful due to the use of unreasonable and excessive force. However, even if the arrest were legal, a reasonable jury could have concluded that the use of potentially deadly force, the alleged death threats and threats of bodily harm, physical abuse and profanity, directed at the plaintiffs during their detention over an extended period of time, were not objectively reasonable for the misdemeanor trespass offense. Thus, the evidence was legally sufficient on the false imprisonment claims.

### Damages Award

¶13. Having considered the validity of the claims for assault, battery and false imprisonment, the next issue to be addressed is whether the jury erred in its award of compensatory damages based on these claims and for damages for mental anguish and emotional distress relating to these intentional tort claims. We have stated:

> In general, damages for mental anguish or suffering are recoverable when they are the natural or proximate result of an act committed maliciously, intentionally, or with such gross carelessness or recklessness as to show an utter indifference to the consequences when they must have been in the actor's mind. In most jurisdictions in fact, damages are recoverable for mental anguish and suffering caused by a willful, wanton, malicious, **or intentional wrong**, **even though no bodily injury is sustained or other pecuniary damage alleged or proved**.

*Lyons v. Zale Jewelry Co.*, 246 Miss. 139, 149, 150 So. 2d 154, 158 (1963) (emphasis added).

¶14. Whitten acknowledges that in cases asserting intentional torts, mental anguish and emotional distress

damages are recoverable without proof of either physical impact or outrageous conduct and that the plaintiffs had no legal requirement to prove either. However, Whitten argues that the plaintiffs failed to prove any such injuries, thereby defeating their prima facie case and entitling him to a directed verdict at trial and a j.n.o.v. on all claims asserted by the plaintiffs. Whitten is incorrect in his contention that the plaintiffs must prove damages to establish a prima facie case.

¶15. We have observed that the difference between that process and a claim involving a wilful tort is that, in the case of a recognized wilful tort, an actual injury is not essential to establish a case of liability. ***Bumgart v. Bailey***, 247 Miss. 604, 607-08, 156 So. 2d 823, 824-25 (1963). Because wilful torts involve a conscious act by the defendant undertaken in disregard of the plaintiff's rights, the law contemplates that a plaintiff is entitled to formal redress for the wrong committed against him even if he cannot demonstrate by a preponderance of the evidence that he suffered an actual injury as a result. ***Id.***; *see also* ***Harbin v. Jennings***, 734 So. 2d 269, 273 (Miss. Ct. App.1999).

¶16. However, the ***Harbin*** Court of Appeals went on to hold that the plaintiffs still bear the burden of demonstrating the need for compensatory damages beyond nominal damages, because a plaintiff who has been intentionally wronged without demonstrable injury is to be awarded only nominal damages. ***Id.*** at 273. In ***Harbin*** a high school student sued a photographer and a picture frame company, alleging invasion of privacy based on use of a photograph without permission. The Court of Appeals noted that Harbin did not claim any actual damage except for emotional distress, did not claim that her distress manifested itself in any outward way beyond causing periods of sleeplessness, periods of irritability, and an inability to maintain a standard body weight. She presented no medical or psychological expert testimony to establish any diagnosis of a significant emotional disturbance or disorder. ***Id.*** at 274. The Court of Appeals noted that to be compensable, something beyond the kinds of discomforts Harbin related must be shown.

¶17. Whitten claims that this case involves precisely the same issues, because there is a lack of expert or medical testimony and because the damages sustained by the plaintiffs amounted to similar "discomforts" rather than demonstrable injuries. Whitten also cites ***Lyons*** for the proposition that there must be "definite and objective proof" of the emotional distress damages, as well as ***Morrison v. Means***, a case involving negligent infliction of emotional distress, where this Court stated that evidence consisting solely of a claim of sleeplessness and mental anguish did not demonstrate an actual injury with sufficient certainty to warrant compensation. ***Morrison v. Means***, 680 So. 2d 803, 806-07 (Miss. 1996). The key difference between these cases and the present case is the nature of the incident from which the damages flow. Receiving death threats from an armed man who shot at their vehicle, handcuffed them, and had taken them prisoner amounted to more than a mere "discomfort."

¶18. The plaintiffs point out that in ***Adams v. U.S. Homecrafters, Inc.***, 744 So. 2d 736 (Miss. 1999),[(2)] this Court recently emphasized that the "seminal case" governing claims for emotional distress not accompanied by physical injury is ***Sears, Roebuck & Co. v. Devers***, 405 So. 2d 898 (Miss. 1981), reiterating the rule that a party may not recover damages for mental anguish "unaccompanied by physical or bodily harm" without evidence of "willful, wanton, malicious or intentional wrong." ***Adams***, 744 So. 2d at 742. In ***Devers***, this Court stated:

> Where there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally-or even unintentionally yet the results being reasonably foreseeable-Courts can in certain circumstances comfortably assess damages for mental and emotional stress, even though there has

been no physical injury. In such instances, it is the nature of the act itself-as opposed to the seriousness of the consequences-which gives impetus to legal redress....

405 So. 2d at 902.

¶19. In *Adams,* this Court further emphasized that damages may more comfortably be assessed where the conduct is intentional:

It is undisputed that under Mississippi law, a plaintiff asserting a claim for mental anguish, whether as a result of simple negligence or an intentional tort, must always prove that the emotional distress was a reasonably foreseeable result of the defendant's conduct. In cases of intentional infliction of emotional distress, where the defendant's conduct was "malicious, intentional or outrageous," the plaintiff need present no further proof of physical injury.

*Id.*, 744 So. 2d at 743.

¶20. The plaintiffs argue that they presented sufficient proof of the lingering emotional effects of the incident, as well as the fear and humiliation inflicted at the scene, to justify the jury's verdicts. We consider each of the plaintiffs' damage claims in turn.

### Plaintiff Randy Cox

¶21. Cox was the driver of the pickup, who was traveling to inspect the land leased by his brother, Lester Cox. Cox testified that Whitten fired a gun several times at his truck. He testified that he heard a bullet pass by the open window of the truck. Cox also testified that Whitten threatened to throw him handcuffed into Buzzard Bayou to see if he could swim, threatened to harm him physically, actually shot a tire out on his truck, held a gun to his head, pulled his cap down over his face, made him lie face down on the ground, and said that he ought to kill him. Cox then testified how he was led by armed men with semi-automatic weapons to a building where he was detained for an extended period of time during which he did not feel free to leave. As already noted, many of these contentions were disputed by Whitten, but they were before the jury and the jury judged their veracity, apparently crediting Cox's account. Cox described how the incident that Sunday afternoon placed him in an immediate state of shock. Cox also testified that the incident had changed him, he said he felt demeaned as a result of the incident, had suffered marital problems, and that these changes in him had played a big part in his divorce from his wife. His brother, Lester Cox, testified that since the incident, this emotional distress caused Randy Cox to lose around thirty pounds.

### Plaintiff Tod Logan

¶22. Tod Logan's testimony corroborates that of Cox in regard to the incidents that unfolded on the Sunday afternoon in question. Logan described hearing the gun shots and seeing several armed men approaching the truck, he described his reaction as one of "shock." He described Whitten as "screaming and cursing," and he corroborated Cox's testimony that Whitten had a beer in one hand and a pistol in the other. Logan testified that the other men with Whitten were carrying assault rifles and that Whitten ordered one of the men to shoot the truck, though he did not recall any of them actually shooting the truck. Logan testified that Whitten had the hammer back on his pistol, that he called them "sorry sons of bitches" and ordered them on the ground. Logan testified that Whitten pointed the cocked gun directly at him and that he felt very threatened. Logan claims that he heard Whitten threaten Cox once he was on the ground handcuffed, saying "I'll kick your fucking face in." He also claims that Whitten turned to him and Spinosa and said of Cox, "We

ought to see if he can swim with them (handcuffs) on." Logan also testified that Whitten pulled Cox's cap down over his face and described Cox saying to Whitten, "to either shoot him or let's go call the law." Logan testified that all at the camp except for the three detainees were armed, and that they were detained over an hour or two and were not free to leave.

¶23. Logan testified that he felt for sure that Whitten might have shot Randy Cox and that the incident has stuck in his mind. He testified that since the incident he has been afraid to leave his wife and children alone and that he suffered from nervousness and worry. He claims that as a result he is unable to concentrate at work and has become short tempered with his wife and children. Logan's wife also testified that Logan had acted differently since the incident, that he did not like to leave his family alone and trusted people less than he did before. She also testified that he was nervous and found it difficult to sleep and that his work had suffered. Logan's father testified that Logan's work had been affected, he stayed nervous and upset all the time, and was not the same since the incident.

### Plaintiff Phillip Spinosa

¶24. Spinosa generally confirmed the description of the incident given by Cox and Logan. He also testified that Whitten's pistol was cocked with the hammer back and that the barrel was about 12 inches from his head. He stated that he could tell the pistol was a .45 because he could see the diameter of the barrel. He also stated that Whitten said, "Get out of the truck or I'll blow your goddamn head off." He testified that Whitten was angry, called them "stupid sons of bitches," and threatened to shoot Cox for what he did. Spinosa testified, "I thought I was fixin to die." Spinosa said Whitten kept them down on the ground, cursing and insulting them, during which he threatened to throw Cox into the bayou with the handcuffs still on him. Spinosa recalled Cox saying, "Johnny, you can either shoot me or we can get on the phone to the sheriff or something; whatever we need to do we need to get it done." Regarding the alleged racial slur and reference to the futility of seeking relief in the local justice court, Spinosa interpreted the statement as meaning, "Telling us, as far as the way I saw it, you know, from knowing the man and the power he had, saying that we could try to do what we wanted to; as far as if we didn't come to a decision with him nothing would be done about it." Spinosa testified, "I felt devastated, like, you know, that this man has every right to do what he just did to us and I felt like I was just an old dog that somebody kicks around." Spinosa testified that after the incident he would be put in fear every time he saw Whitten and that he was troubled enough to move his family away from Sumner.

¶25. In light of the evidence presented, we must now consider whether the jury acted unreasonably in awarding actual money damages to Cox, Logan and Spinosa, and whether those damages were contrary to law. Where an intentional tort has been committed "it is the nature of the act itself -- as opposed to the seriousness of the consequences -- which gives impetus to legal redress . . . ." *Devers,* 405 So. 2d at 902. Damages are recoverable for mental anguish and suffering caused by a willful, wanton, malicious, or intentional wrong, even though no bodily injury is sustained or other pecuniary damage alleged or proved. *Lyons,* 246 Miss. at 149, 150 So. 2d at 158. Whitten's actions on the day of the incident were an intentional wrong. The nature of his actions certainly merit legal redress, and the facts justify damages beyond nominal damages. Even without taking into account the plaintiffs' claims regarding the lingering effects the incident had on their lives, their fear for their lives and humiliation suffered on the day of the incident in question would alone seem enough for a reasonable jury to award compensatory damages. The larger verdict for Cox, $50,000, as opposed to the $30,000 awarded to both Spinosa and Logan, respectively, can be explained by the fact that he was handcuffed, endured a second battery when his cap

was shoved down over his face, and because of the threat to throw him into a bayou while handcuffed. If the jury was convinced by the testimony of Cox, Logan and Spinosa, there was more than enough evidence to support their emotional distress claims and to award substantial compensatory damages, regardless of whether expert testimony was offered. The trial court did not err in denying Whitten's motion for a directed verdict and motion for j.n.o.v. on this issue.

### II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ALLOWING THE ADMISSION OF EVIDENCE OF WHITTEN'S ALLEGED STATEMENT CONTAINING THE WORD "NIGGER," AND DENYING WHITTEN'S MOTION FOR A NEW TRIAL.

¶26. "A motion for a new trial falls within a lower standard of review than does that of a judgment notwithstanding the verdict or a directed verdict. A motion for a new trial simply challenges the weight of the evidence. 'The Supreme Court will reverse the lower court's denial of a motion for a new trial only if, by doing so, the court abused its discretion.' 'We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice.'" *Sheffield v. State*, 749 So. 2d 123, 127 (Miss. 1999) (citations omitted).

¶27. "The standard of review regarding admission [or exclusion] of evidence is abuse of discretion. Where error involves the admission or exclusion of evidence, this Court 'will not reverse unless the error adversely affects a substantial right of a party.'" *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 113 (Miss. 1999) (citations omitted).

¶28. Prior to voir dire, Whitten made a motion in limine requesting that the trial court exclude any comment and evidence as to the contention that Whitten said at some point during the detention of the plaintiffs, "that nigger judge in Sumner will not be able to help you." Whitten argued first that the statement was not relevant and second that its probative value would be substantially outweighed by its prejudicial effect. Whitten also informed the trial court that he denied ever making such a statement. Whitten stated that he had no objection to the plaintiffs testifying to their recollection of the statement, but without using that "highly inflammatory word" before the jury. Whitten claimed that the injection of the word "nigger" into the trial would corrupt the jury. The trial court denied the motion in limine, finding that the alleged statement was relevant under M.R.E. 401, and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice under M.R.E. 403. Specifically, the trial judge found as follows:

> THE COURT: Well, this is certainly a troubling evidentiary matter but I just have to go with my gut feeling on it. And considering the law and the evidence, knowing it's discretionary, subject to abuse of discretion on appeal when the Supreme Court looks at it, but I really believe it's admissible. I think it's relevant. I think the probative value is not substantially outweighed by the danger of unfair prejudice. I recognize that certainly there will be blacks on the jury, but all things considered, I think the jury is entitled to hear the entire events as far as what took place supposedly. I know that statement evidently is denied by the defendant Whitten but I think the jury is entitled to hear all the evidence as to what happened out there and make a decision. So considering Rule 401, it is relevant. Under 403 the probative value is not substantially outweighed by the danger of unfair prejudice.

¶29. The first mention of the word "nigger" was during direct examination of Cox, where the following discourse took place between Cox and his attorney:

Q. Just tell the jury your conversation between you and John Whitten

A. Okay, John Whitten said - - Okay, he said that I could go ahead and pursue a legal matter for this. He said you can even put it in front of that nigger judge right there in Sumner - -

Q. Those were his words?

A. That was his words, not mine. But wouldn't nothing happen to him but be damn sure something would come of it, that I wouldn't get anything or anything good would come of it.

¶30. On cross-examination, Spinosa testified as follows regarding what Whitten said: "[I]f you decide you want to pursue this, he said, if you think it will do you any good, he said we can do something about it. We can go see that black nigger judge in Sumner if you think it will help you any." Spinosa interpreted the statement as meaning, "Telling us, as far as the way I saw it, you know, from knowing the man and the power he had, saying that we could try to do what we wanted to; as far as if we didn't come to a decision with him nothing would be done about it."

¶31. While being called as an adverse witness, Whitten testified that he did not say the word "nigger," and that it was Cox, not he, who said it. Specifically, Whitten testified that when he told Cox he was going to recommend to the Sheriff that Cox be jailed for trespassing, Cox said "That black nigger judge ain't going to put me in jail." It is of note that Whitten sought to exclude all reference to the word "nigger" from the jury, yet during his own testimony he brought up the very same word and attributed it to Cox. Thus, Whitten not only denied using the slur, but placed additional emphasis on it by attempting to turn it against Cox. This appears inconsistent with his claiming unfair prejudice as a result of admitting the slur into evidence.[(3)]

¶32. Whitten argues that the verdicts reached by the jury on the intentional tort claims, as well as the damages they awarded, were influenced by the animus created between an all African-American jury and Whitten by the injection of the word "nigger" into evidence, which Whitten claims is inflammatory and irrelevant. Whitten cites *Gaston v. State*, 239 Miss. 420, 123 So. 2d 546 (1960), where this Court found reversible error in admitting the word "negro" into evidence when it was wholly irrelevant in pertaining to the guilt or innocence of the defendant. Whitten also cites *GMAC v. Baymon*, 732 So. 2d 262 (Miss. 1999), where an expert testified that during his years of selling collateral insurance protection in another state, the insurance was placed disproportionately upon racial minorities. This Court held this evidence irrelevant to the suit being brought by the borrower, which was to determine whether the lender committed breach of contract or fraud, and reversed because the borrowers counsel had played the "race card" for no justifiable reason. *Id.* at 271-2.

¶33. M.R.E. 401 defines relevant evidence as follows:

"Relevant Evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

¶34. M.R.E. 403 states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

¶35. The threshold for admissibility of relevant evidence is not great. Evidence is relevant if it has any tendency to prove a consequential fact. In both of the cases cited by Whitten, the issue of race was wholly irrelevant to the claims asserted or to the damages claimed. The comment in the current case is relevant to a full understanding of all the facts. In this case the purpose of the evidence offered by the plaintiffs was to show their sense of helplessness, which is relevant to whether they felt free to leave and therefore relevant to their claim for false imprisonment. The evidence was also relevant to the plaintiffs' contention that Whitten sought to convince them that they would have no potential remedies available to them to redress his actions that afternoon. The admission of the evidence therefore meets the threshold requirement of relevance, unlike the cases relied on by Whitten.

¶36. Was the probative value of the relevant evidence substantially outweighed by the danger of unfair prejudice? The jury in this case was not unanimous, the verdict was 9-3 in favor of awarding compensatory damages for the intentional torts and associated emotional distress suffered by the plaintiffs. The jury declined to award punitive damages. The plaintiffs offered two theories of why the evidence was relevant. Given the disparity of power between Whitten, a municipal judge with a gun, and the plaintiffs, any words on his part that emphasize this disparity of power, particularly in the context of discussing the plaintiffs' potential remedies, would appear highly relevant. The trial court did not abuse its discretion in allowing the testimony into evidence. The verdict is not so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice.

### III. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING WHITTEN'S MOTION FOR REMITTITUR.

¶37. Our statutory law provides:

> The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only. If the additur or remittitur is accepted and the other party perfects a direct appeal, then the party accepting the additur or remittitur shall have the right to cross appeal for the purpose of reversing the action of the court in regard to the additur or remittitur.

Miss. Code Ann. § 11-1-55 (1991).

¶38. Whitten repeats his argument that the damages awarded by the jury were "astronomical." Whitten argues that the jury's decision on the mental anguish and emotional stress damages were a result of bias, prejudice and passion on the part of the jury. This issue in regard to the award of damages has already been discussed. The damages awarded were not excessive, or contrary to the overwhelming weight of credible evidence, and did not result from bias, passion and prejudice on the part of the jury. The trial court did not err in denying Whitten's motion for remittitur.

### IV. WHETHER THE TRIAL COURT ERRED IN ALLOWING CERTAIN JURY INSTRUCTIONS.

¶39. Whitten argues that the trial court committed reversible error in granting four jury instructions over his objection and in denying his motion for a new trial after judgment was entered.

> This Court's standard of review in reviewing jury instructions is as follows: In determining whether reversible error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.

*Fielder v. Magnolia Beverage Co.*, 757 So. 2d 925, 929 (Miss. 1999) (citations omitted).

### Jury Instruction 19

¶40. Whitten claims this instruction amounted to a peremptory instruction because it included a reference to shooting the tire in the vehicle in which the plaintiffs were riding. The instruction states in pertinent part, "Plaintiff, Randy Cox claims that John Whitten, III, committed a battery upon him by shooting the tire of the car in which he was riding, by placing a pistol barrel at his head, by frisking him, by knocking his cap and sunglasses down over his face and by causing him to be handcuffed. [Deleted text] . . . by defendant Whitten by shooting of the tire in the vehicle in which they were riding." The instruction then went on to describe the elements of the intentional tort of battery and instructed that these elements had to be met by a preponderance of the evidence. Though the deletion renders the instruction somewhat unclear, the quoted text does not amount to a peremptory instruction. It merely sets forth the facts upon which Cox asserts his claim of battery. The court did not instruct the jury that they must find for Cox on his battery claim if they also found the tire on the truck was shot by Whitten, despite Whitten's assertions to the contrary. The instruction leaves the jury to decide whether those facts amount to a battery under the circumstances. The trial court did not err in granting this instruction.

### Jury Instruction 22

¶41. This instruction relates to the plaintiffs' false imprisonment claim. Whitten objected that the instruction did not provide any standard or guidance to the jury by which to determine the existence of "legal justification" for the arrest and detention of the plaintiffs by Whitten. The instruction states in pertinent part that "Legal justification for confinement is only met when the totality of circumstances indicate the actions of the defendant were objectively reasonable in their nature, purpose, extent and duration." The instruction then sets forth the elements of false imprisonment. Whitten cites no authority for his proposition that this instruction was inadequate. As noted earlier, the test for whether a detention is unlawful is whether, looking at the totality of the circumstances, the action of the defendant was "objectively reasonable in their nature, purpose, extent and duration." *Thornhill v. Wilson,* 504 So. 2d at 1208. The jury instruction adequately conveyed the appropriate legal standard to determine whether the arrest and detention of the plaintiffs was legally justified. Thus, the trial court did not err in granting this instruction.

### Jury Instruction 29

¶42. This instruction instructs the jury to consider compensatory damages if Whitten is found to be liable to any plaintiff, and to award damages to compensate for any losses or injuries which are proven by a preponderance of the evidence. Whitten argues that the instruction is fatally flawed because it (1) fails to advise the jury that compensatory damages must be viewed with "reasonable certainty" and (2) was not based on the evidence presented by the plaintiffs who confined their claims for damages to evidence of

mental anguish. Whitten's objections at trial were focused on the sufficiency of the proof, arguing that the emotional distress claims were not corroborated by medical proof, rather than on the language of the jury instruction. The jury instruction is sufficient in that it calls for the plaintiffs to prove their damages by a preponderance of the evidence. The trial court did not err in granting this instruction.

### Jury Instruction 30

¶43. This instruction is in regard to the claim that the plaintiffs have undergone mental suffering as a result of the acts of the defendant. The instruction gives definitions of "mental suffering" and notes that there are no exact standards for measuring such damages, but that the damages should be "fair and just." Whitten again argues that the plaintiffs' proof failed to prove that they actually suffered any mental anguish damages. This argument again focuses on the sufficiency of the proof put on by the plaintiffs, an argument based on the sufficiency of the evidence, not the language of the jury instruction.

¶44. The instructions given to the jury, when read as a whole, fairly announce the law of the case and created no injustice. Whitten's assignments of error regarding these four jury instructions are without merit.

### V. SHOULD THE TRIAL COURT HAVE ENTERED AN ADDITUR OR ORDERED A NEW TRIAL BASED ON THE JURY'S AWARD OF $0.00 FOR WHITTEN'S TRESPASS CLAIM?

¶45. The standard of review for an additur is the same as that for remittitur. The jury found for Whitten on each of his counterclaims of trespass against Cox, Logan and Spinosa, and awarded him $0.00 in damages. Whitten argues that because his land had been burdened with an unlawful trespass, the failure of the jury to award at least nominal damages was contrary to the law and/or the result of bias, prejudice or passion. The plaintiffs argue that there was no error in refusing to award actual damages because Whitten failed to present any evidence of actual damages. For the same reason, plaintiffs argue that the trial court did not err in refusing to grant an additur. The jury was instructed on both nominal damages, as well as compensatory damages.

¶46. Whitten's claim that there should have been an additur regarding compensatory damages is without merit, because he did not claim or prove any actual damages resulting from the trespass which the jury could have compensated. "It is a principle of universal application that every trespass gives the landowner a right to at least nominal damages. However, in order to recover more than nominal damages, actual damages must be shown." *Chevron Oil Co. v. Snellgrove,* 253 Miss. 356, 363, 175 So. 2d 471, 474 (1965).

¶47. However, Whitten is correct to point out that where there is a trespass to land, the landowner has a right to at least nominal damages. The jury's refusal to award nominal damages for the trespass was in error, but since there were no actual damages resulting from the trespass, this error is of little consequence. If this Court reversed and remanded on this issue, Whitten could only receive nominal damages. Instead, this error will be cured by this Court reversing and rendering an award of nominal damages without the necessity of remand or retrial. *See Daniel v. McNeel*, 221 Miss. 666, 668, 74 So. 2d 753, 754 (1954) (where the Court reversed and rendered and awarded a nominal sum of $10.00 when the only issue to be resolved was the payment of nominal damages.) Accordingly, we reverse and render as to the trespass claim only and award Whitten nominal damages in the total amount of $10.00 against Cox, Logan, and Spinoza, jointly and severally.

## CONCLUSION

¶48. There is sufficient evidence in the record from which a reasonable jury could find for Cox, Logan, and Spinosa on their intentional tort claims of assault, battery, and false imprisonment, their emotional distress claims and to award compensatory damages for these claims. The trial court did not err in denying Whitten's motion for a directed verdict and motion for j.n.o.v. on these issues. Though mindful of its potentially inflammatory and prejudicial effects under many circumstances, the trial court did not abuse its discretion in allowing the word "nigger" into evidence in this particular case. In the context of the evidence presented, it was relevant, and its probative value was not substantially outweighed by its prejudicial effect. The verdict of the jury is not so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. The compensatory damages awarded by the jury were not excessive or contrary to the overwhelming weight of credible evidence, and did not result from bias, passion or prejudice on the part of the jury. The instructions that were given to the jury, when read as a whole, fairly announced the law of the case and created no injustice. The jury's refusal to award nominal damages for the trespass to Whitten's land was in error, but since there were no actual damages resulting from the trespass, such an error will be cured by this Court rendering an award of nominal damages in the amount of $10.00 in favor of Whitten.

¶49. Therefore, this Court reverses the judgment below in part to the extent that it awarded John W. Whitten, III, no nominal damages for the trespass on his land by Randy Cox, Tod Logan, and Philip Spinosa, and this Court renders judgment here that John W. Whitten, III, shall recover the total sum of $10.00 in nominal damages from Randy Cox, Tod Logan, and Philip Spinoza, jointly and severally, plus post-judgment interest at the annual rate of 8% from the date of this judgment until paid. In all other respects, the judgment of the Tallahatchie County Circuit Court is affirmed.

¶50. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

> **PRATHER, C.J., PITTMAN AND BANKS, P.JJ., SMITH, MILLS AND DIAZ, JJ., CONCUR. COBB, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.**

> **McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶51. I concur with the majority opinion and the judgment except for their disposition of the nominal damages issue. This Court should not determine the amount of such damages. It is only within the province of the trier of fact, and not of this Court, to determine the amount of nominal damages which are appropriate. Accordingly, I dissent, in part.

¶52. Since Whitten is asking for an additur for damages, nominal or otherwise, this Court's discretion is limited. We held in *Rodgers v. Pascagoula Pub. Sch. Dist*,611 So. 2d 942, 945 (Miss. 1992), that "[t]he scope of appellate review in an additur appeal is limited to determining whether the trial court abused its discretion." *See also **State Highway Comm'n v. Warren***, 530 So. 2d 704, 707 (Miss. 1988). "Awards set by jury determination are not merely advisory and generally will not be set aside unless so unreasonable as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous. *Rodgers*, 611 So. 2d at 945 (citations omitted). The amount of damages awarded is primarily a question for the jury. ***South Cent. Bell Tel. Co. v. Parker***, 491 So. 2d 212, 217 (Miss. 1986); ***Edwards v.***

*Ellis*, 478 So. 2d 282, 289 (Miss. 1985)." *Maddox v. Muirhead*, 738 So. 2d 742, 743-44 (Miss. 1999). We may not set the amount of damages. That power lies within the province of the jury and the discretion of the trial judge to award an additur. Miss. Code Ann. § 11-1-55 (1991) is controlling on this issue and specifically states the proper procedure for handling such matters:

> The supreme court or any other court of record in a case in which the money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. **If such additur or remittitur be not accepted then the court may direct a new trial on damages only**. If the additur or remittitur is accepted and the other party perfects a direct appeal, then the party accepting the additur or remittitur shall have the right to cross appeal for the purpose of reversing the action of the court in regard to the additur or remittitur.

(emphasis added).

¶53. The majority's reliance on *Daniel v. McNeel*, 221 Miss. 666, 668, 74 So. 2d 753, 754 (1954) is misplaced. With the amendment of Miss. Code. Ann. § 11-1-55, the powers of this Court to determine the amounts of such awards were extinguished. We must use great discretion in disturbing jury awards. The majority not only disturbs the jury's award, but relies on precedent that has been statutorily overruled.

¶54. The jury's intent was very clear in their decision to find that a trespass occurred but only awarded $0.00 in damages. It is also clear that the trial judge did not award an additur. While we may hold that he abused his discretion, we are not in a position to set the amount of nominal damages. By stepping in and creating its own figure, the majority essentially issued an additur and supplanted its decision for that of the jury and the trial judge. We should remand the case on this issue so that a jury may determine what nominal damages are appropriate. Accordingly, I dissent in part.

1. These events led to Whitten, a municipal judge, being fined and issued a public reprimand by this Court. *See Mississippi Comm'n on Judicial Performance v. Whitten*, 687 So. 2d 744 (Miss. 1997). The investigation and discipline were excluded from consideration by the jury in the present case.

2. *Adams* was pending when the plaintiffs responded to Whitten's appeal, but the case has since been decided, and the motion for rehearing denied.

3. All three plaintiffs in this action are Caucasian, as is Whitten.