# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00737-COA

**MAIN STREET HOLDING INC.**                                          **APPELLANT**

**v.**

**OMSIV INC.**                                                             **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 04/17/2015 |
| TRIAL JUDGE: | HON. WILLIAM H. SINGLETARY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | LAWRENCE C. GUNN JR. |
| ATTORNEY FOR APPELLEE: | THOMAS M. BRYSON |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | ENTERED JUDGMENT IN FAVOR OF APPELLEE ON ITS CLAIM FOR BREACH OF CONTRACT FOR $30,052.58 PLUS FOUR PERCENT PRE- AND POST-JUDGMENT INTEREST; AWARDED APPELLEE ATTORNEY'S FEES OF $23,520; AWARDED APPELLANT $0 IN DAMAGES ON ITS TRESPASS CLAIMS; AND DENIED ALL OTHER RELIEF |
| DISPOSITION: | REVERSED AND RENDERED IN PART; AFFIRMED IN PART - 11/01/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., JAMES AND WILSON, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.    Main Street Holding Inc. owned a 5.4-acre tract of land on I-55 in Byram.  Main Street sold the rear 1.8 acres to Omsiv Inc., which intended to build a Holiday Inn Express.  As part of the transaction, Main Street also agreed to establish a thirty-foot-wide mutual easement for a shared driveway.  The easement bisected Main Street's remaining 3.6 acres

and provided access to the frontage road from Omsiv's property. The parties agreed to share the construction cost of the driveway on a pro rata basis.

¶2. Omsiv's owner, Minal Patel, subsequently realized that the easement was not wide enough to accommodate the installation of utility lines or the hotel's sign at the frontage road. One of Main Street's owners, Larry Haik, told Patel that Omsiv could run utility lines down either side of the easement and place a sign just outside of the easement, although Haik's approvals were never reduced to writing.

¶3. Omsiv contracted for construction of the driveway at a cost of approximately $45,000 and then requested that Main Street pay its share. Haik initially responded Main Street would pay Omsiv later, but Main Street subsequently refused to pay, claiming that the driveway was defective and that Omsiv had failed to consult with Main Street regarding its construction. When Omsiv continued to demand payment, Main Street filed suit in chancery court, alleging that Omsiv's installation of utility lines and placement of a sign outside of the easement constituted a trespass. During the course of the litigation, Omsiv offered to pay Main Street more than $10,000 to extend the easement (by three feet on one side and one foot on the other) to accommodate the sign and utilities, but Main Street refused, so Omsiv eventually removed the sign and utility lines (at a substantially greater cost). Omsiv filed a counterclaim against Main Street for refusing to pay its share of the cost of constructing the driveway.

¶4. The case eventually proceeded to a two-day trial, which included a site visit by the chancellor. The chancellor found that the parties' agreement required Main Street to pay two-thirds of the cost of constructing the driveway, so he entered judgment for that amount

2

in favor of Omsiv. He also found that although Omsiv had trespassed on Main Street's property by exceeding the boundaries of the easement, Main Street had suffered no harm as a result. Accordingly, he did not award Main Street any damages. Finally, the chancellor awarded Omsiv attorney's fees in the amount of $23,520 for Main Street's "frivolous," "egregious," and harassing actions during the pendency of the lawsuit.

¶5. On appeal, Main Street does not challenge the chancellor's ruling requiring it to pay its share of construction costs. Main Street argues only that the chancellor erred by not awarding at least nominal damages for Omsiv's trespass and by awarding attorney's fees to Omsiv. We conclude that the chancellor should have awarded nominal damages for Omsiv's trespass and therefore reverse and render judgment for Main Street in the amount of $10 on that claim. We conclude that the chancellor did not err by awarding attorney's fees to Omsiv; therefore, we affirm the remainder of the judgment.

### FACTS AND PROCEDURAL HISTORY

¶6. Main Street owned a 5.4-acre parcel of commercial property in Byram. In 2006, Main Street entered into an agreement to sell the rear 1.8 acres of the parcel to Patel, a representative of Omsiv. The parties' contract provided that they would "create a drive easement each in favor of [the] other, fully assignable to successors in title, by either party to [the] transaction" and that "[t]he cost related to the common entrance drive will be shared on a pro-rata basis between all owners of the . . . 5.4 acre original parcel." Subsequently, Main Street executed an easement grant that stated that the parties "agreed that the cost and upkeep related to the ingress/egress easement . . . [would] be shared on a pro-rata basis

3

between all present or subsequent owners of the subdivided parcels comprising the original 5.46 acre tract of land[.]" The easement was thirty feet wide and contained 0.18 acres.

¶7.     Omsiv constructed a Holiday Inn Express on its property and also contracted for the construction of the common drive. Omsiv also had utility lines installed near the driveway and placed a sign for the hotel along the frontage road. Both the utility lines and the sign were located just outside of the boundaries of the easement; however, Omsiv's owner, Patel, testified that one of Main Street's owners, Haik, orally authorized Omsiv to run the utility lines down either side of the easement and also approved the placement of the sign outside of the easement. In March 2009, when construction of the driveway was complete, Omsiv sought payment from Main Street for its share of the total cost of approximately $45,000. According to Patel, Main Street initially indicated that it would pay later, after it had sold one or both of the adjacent parcels, but Main Street never made any payment for the cost of the driveway.

¶8.     On September 24, 2010, Main Street filed a complaint in chancery court, alleging that Omsiv had trespassed by locating the sign and utility lines outside of the easement and by leaving construction debris on Main Street's property. Omsiv denied any trespass and counterclaimed for Main Street's share of the construction costs for the driveway. In reply, Main Street did not deny that it had agreed to pay part of the cost of constructing the driveway, but Main Street objected that it "was never given any notice of the construction . . . nor costs thereof and was denied the opportunity to participate in any way or to have any input or agreement into the construction costs."

4

¶9.    On March 31, 2011, Omsiv filed a motion for a temporary restraining order (TRO) and preliminary injunction to prevent Main Street from shutting off all utilities to Omsiv's property.  Main Street had notified Omsiv by letter that it was "having the gas and water companies disconnect the gas and water effective immediately," and CenterPoint Energy had notified Omsiv that its service would be disconnected within a matter of days.  The chancellor granted a TRO, which was subsequently extended by agreement.

¶10.    Main Street subsequently amended its complaint to allege two separate trespasses.  Main Street alleged that Omsiv had committed an "initial trespass" by placing its sign and utility lines beyond the easement; leaving construction debris on Main Street's property; installing drainage, water, and lighting systems on Main Street's property; and landscaping Main Street's property.  Main Street also alleged that Omsiv committed a "second trespass" by removing some of the aforementioned encroachments (after Main Street complained and then filed a lawsuit).  Main Street also asserted a claim for unjust enrichment and claimed that Omsiv had diverted surface water runoff and caused "water damage" to Main Street's property.  Finally, with respect to the cost of the driveway, Main Street claimed that it was entitled to a credit for the cost of the land under the driveway, and it alleged that Omsiv unilaterally "designed and constructed [the driveway] in such a defective and inadequate manner that it [would] not serve any purpose of Main Street[.]"

¶11.    The case was tried on July 16-17, 2013.  Haik, one of Main Street's owners, claimed that the parties understood that the cost of the land under the driveway would be included in calculating the cost of the common drive that would be shared on a pro rata basis.  He

5

admitted, however, that the contract did not specifically so state. Haik denied that he had any subsequent discussions with Patel regarding the placement of utility lines or the hotel's sign. He testified that he had "no opinion" as to whether Main Street had been damaged as a result of Omsiv's trespasses.

¶12. Edwin Pearson, Main Street's majority owner, also testified that the parties had discussed—and Omsiv (i.e., Patel) knew and agreed—that the allocable cost of the driveway would include the cost of the land on which it was built. Pearson admitted that his understanding "was not really spelled out in the contract," but he claimed that while the parties were "standing around waiting" at closing, they "had a discussion about that . . . to make sure that [they were] perfectly clear so there [would not] be any misunderstanding" later. Pearson testified that the easement was worth over $80,000, so in his view Main Street owed Omsiv little or nothing for the construction of the driveway.[1] Pearson also criticized Omsiv's construction and design of the driveway and testified that Main Street was never consulted about it until Omsiv sent it a bill for its share of the cost. Pearson also claimed that during construction Omsiv repeatedly left debris on Main Street's property[2] and that he spent $2,000 to $3,000 to repair damage to the property.

¶13. Patel, president of Omsiv, testified that during construction he realized that he would

---

[1] As noted above, Omsiv submitted construction costs of approximately $45,000. Thus, an $80,000-plus credit for the value of the easement would have essentially covered Main Street's obligation to share in the cost of the driveway.

[2] Pearson noticed the debris when he operated a fireworks stand on the property during December/January and June/July. At the time of trial, Main Street's portion of the property remained undeveloped.

not be able to locate utility lines or the hotel's sign within the thirty-foot-wide easement. Patel testified that he spoke with Haik about this issue, and Haik gave him permission to place both the utilities and the sign just outside of the easement. Patel testified that he had no problems with Main Street until February or March 2009, when he sent a bill for the driveway construction costs. According to Patel, Haik initially told him that Main Street could not afford to reimburse him immediately but would do so as soon as it sold one or both of the adjacent parcels; however, Main Street never made any payment. After Omsiv continued to request payment, Main Street complained about Omsiv's sign and utilities and then filed suit.

¶14. Patel testified that after Main Street filed suit, he offered to pay approximately $10,000 for the additional land on which the sign and utility lines were located (about one foot on one side of the easement and three feet on the other side), but Main Street refused to sell or grant an additional easement. Therefore, Omsiv eventually hired contractors to move the utility lines, light poles, and its sign in order to address Main Street's trespass allegations. A $18,950 bill for part of this work was admitted into evidence, and Patel testified that Omsiv incurred additional costs of $10,000 to $15,000 in the process of removing the encroachments.

¶15. The parties also called witnesses to testify about the quality of the driveway. For Main Street, Alfred Crawley, a licensed engineer, identified various criticisms of the driveway's construction, although he acknowledged that it would likely be twenty to thirty years before any significant repairs were necessary. For Omsiv, civil engineer Greg Bonds

7

testified that any cracks in the driveway were minor and would not affect its useful life. Bonds explained that cracks in concrete driveways are inevitable, and he opined that the driveway was well-constructed. After both sides rested, the chancellor visited the site with counsel for both parties.

¶16. On May 19, 2014, the chancellor entered his opinion. He concluded that the parties' contract did not require Omsiv to pay or credit Main Street for the cost or value of the land underneath the driveway. He reasoned that the written terms of the contract could not be altered by any alleged verbal agreement between Main Street and Omsiv, so Omsiv owed Main Street nothing for the ground under the driveway. The chancellor also concluded that the provision of the contract requiring the parties to share costs related to the driveway on a pro rata basis was unambiguous and should be interpreted to allocate the costs equally among the three similarly sized parcels comprising the development. Thus, Main Street was required to reimburse Omsiv for two-thirds of the costs that it incurred in constructing the driveway ($30,052.58). The chancellor also rejected Main Street's contention that the driveway was defective, finding that it "was constructed in a manner entirely suitable to the purposes contemplated by the parties."

¶17. The chancellor also rejected Main Street's unjust enrichment claim and its claim that it was entitled to damages based on alleged surface water runoff from Omsiv's property, finding that the proof did not justify an award of damages on either claim. With respect to Main Street's trespass claims, the chancellor found Patel's testimony credible and the testimony of Pearson and Haik not credible. That is, the chancellor concluded that Haik had

8

given Patel verbal permission to locate the utility lines and sign outside of the easement. Even so, the chancellor recognized that Haik's verbal authorizations were insufficient to grant an easement for utilities or any other purpose. Thus, the chancellor found that the evidence established that Omsiv had trespassed on Main Street's property. However, Omsiv's encroachments had all been removed from Main Street's property—at a substantial cost to Omsiv. For this and other reasons—and based on his own inspection of the site—the chancellor concluded that Main Street had failed to establish that it was entitled to any damages as a result of Omsiv's trespasses.

¶18. Finally, the chancellor found that Omsiv was entitled to recover its litigation expenses, including attorney's fees, because Main Street had unnecessarily prolonged and complicated the litigation. The chancellor concluded that Main Street had attempted to offset its unambiguous contractual obligation to reimburse Omsiv for the cost of the driveway by demanding to be paid for the ground under the driveway, by claiming nonexistent damages based on Omsiv's trespass, and "by the more ham-handed approach of having utilities to Omsiv's hotel turned off." The chancellor found that this had all "been a major miscalculation and waste of time." After receiving evidence that Omsiv had incurred attorney's fees of $36,520 during the litigation, the chancellor awarded Omsiv attorney's fees of $23,520. In the subsequent amended final judgment, the chancellor specifically found that "[t]he legal maneuvers pursued by Main Street were frivolous and calculated to delay and harass Omsiv" and that Main Street's attempt to have Omsiv's utilities disconnected was especially "egregious in nature."

¶19. On appeal, Main Street does not contest that part of the judgment requiring it to reimburse Omsiv for the cost of the driveway. Main Street raises only two issues on appeal: (1) whether it was entitled to at least nominal damages because it proved a trespass; and (2) given that it proved a trespass and (in Main Street's view) presented "substantial evidence opposing [Omsiv's] counterclaim," whether the chancellor erred in awarding attorney's fees to Omsiv. We address these issues in turn below.

## DISCUSSION

### I. Main Street is entitled to nominal damages for Omsiv's trespass.

¶20. Main Street argues that because the chancellor found that Omsiv committed trespass, it was entitled to the "reasonable rental value" of the property on which Omsiv encroached or at least "nominal damages." Omsiv responds that the chancellor found Patel's testimony that Haik had given him permission to locate the utilities and sign outside of the easement "credible," and therefore the chancellor did not find that it had committed a trespass. It is true that the owner's permission or license may be a defense to trespass, *see, e.g.*, *Farragut v. Massey*, 612 So. 2d 325, 332 (Miss. 1992), even if, as the chancellor correctly recognized, Haik's verbal authorizations were insufficient to amend or expand the boundaries of the written easement grant. Therefore, Omsiv's initial encroachments onto Main Street's land may not have amounted to trespasses, at least at the outset. However, at multiple points, the chancellor specifically referred to Omsiv's reentry onto Main Street's property to remove encroachments as a "trespass," and there was some evidence that Omsiv acted unilaterally and did not follow Main Street's instructions when it removed the encroachments.

10

Accordingly, we understand the chancellor to have found that Omsiv committed a trespass, although the trespass resulted in no damages.

¶21.    The Mississippi Supreme Court has held that "where there is a trespass to land, the landowner has a right to at least nominal damages." *Whitten v. Cox*, 799 So. 2d 1, 18 (¶47) (Miss. 2000).  Therefore, the chancellor erred by not awarding nominal damages, "but since there were no actual damages resulting from the trespass, this error is of little consequence. If this Court reversed and remanded on this issue, [Main Street] could only receive nominal damages." *Id.*  Therefore, we will simply reverse and render an award of $10 in nominal damages, as the Supreme Court and this Court have done in prior cases.  *Id.* (rendering judgment for $10 in nominal damages in the absence of proof of actual damages); *see Reeves v. Meridian S. Ry. LLC*, 61 So. 3d 964, 968-69 (¶¶22-23) (Miss. Ct. App. 2011) (rendering judgment for $10 in nominal damages where there was no proof that trespass caused any actual damages); *Gaw v. Seldon*, 85 So. 3d 312, 318 (¶¶21-24) (Miss. Ct. App. 2012) (same).[3]

**II.    The chancellor did not err by awarding Omsiv attorney's fees.**

¶22.    Main Street argues that the chancellor erred by awarding attorney's fees to Omsiv. Although the chancellor did not expressly identify the legal basis of the award, it seems clear from context that he awarded fees pursuant to the Mississippi Litigation Accountability Act,

---

[3] We reject Main Street's argument that it was entitled to the reasonable rental value of the narrow strips of property at issue.  As noted above, the chancellor found credible Patel's testimony that Omsiv encroached on Main Street's property with Main Street's permission.  The chancellor's finding of a "trespass" was based on Omsiv's reentry onto the property to remove the encroachments—which the chancellor found caused no actual damage, and which would not justify a damages award based on the property's rental value.

11

Miss. Code Ann. §§ 11-55-1 to -15 (Rev. 2012). The Act provides that

> in any civil action commenced . . . in any court of record in this state, the court shall award . . . reasonable attorney's fees and costs against any party or attorney if the court . . . finds that an attorney or party brought an action, or asserted any claim or defense, that is without substantial justification, or that the action, or any claim or defense asserted, was interposed for delay or harassment, or if it finds that an attorney or party unnecessarily expanded the proceedings by other improper conduct . . . .

*Id.*, § 11-55-5(1). "When reviewing a decision regarding the imposition of sanctions pursuant to the Litigation Accountability Act, this Court is limited to a consideration of whether the trial court abused its discretion." *Foster v. Ross*, 804 So. 2d 1018, 1022 (¶13) (Miss. 2002).

¶23. Main Street argues that it should not have been sanctioned because it was "successful" on its trespass claim and, in its view, presented "substantial evidence" in response to Omsiv's counterclaim for reimbursement of construction costs. We disagree. With respect to Main Street's "success" on its trespass claim, even though Main Street completely failed to prove that it suffered any actual damages as a result of Omsiv's trespass, it continued to demand both actual damages and *punitive* damages on that claim, even after Omsiv's encroachments had been removed.[4] The chancellor also found that Main Street's effort to cut off the hotel's utilities was especially "egregious" and without justification. In addition, Main Street not only sought to avoid paying for the driveway but also wanted the court to declare "that the entire driveway must be torn up" (at Omsiv's expense) "and a new driveway constructed." And yet, the chancellor, after hearing testimony and personally inspecting the driveway,

---

[4] *But see Hopewell Enters. Inc. v. Trustmark Nat'l Bank*, 680 So. 2d 812, 820 (Miss. 1996) (punitive damages are not recoverable where only nominal damages are awarded).

found that the driveway was "entirely suitable to the purposes contemplated by the parties."

¶24. Finally, Main Street does not challenge the chancellor's ruling that it was not entitled to a credit for the value of the underlying land as part of the "cost related to the common entrance drive." Main Street only argues that its contrary interpretation of the contract was at least advanced in "good faith." However, there was also evidence that could support an inference that Main Street's interpretation of the contract was manufactured after the fact to avoid its obligation to reimburse Omsiv. Patel testified that when he first sought payment from Main Street, Haik said that Main Street could not pay immediately but would pay later, after it sold one or both of the other parcels. Only after Omsiv continued to request payment did Main Street assert that it was entitled to a credit—indeed, essentially a *full* credit—for the value of the easement.

¶25. In summary, there was substantial evidence to support the chancellor's findings that the various "legal maneuvers pursued by Main Street were frivolous and calculated to delay and harass Omsiv" and that Main Street's attempt to have Omsiv's utilities disconnected was especially "egregious in nature." The evidence was sufficient to support the chancellor's determination that Main Street had a clear obligation to reimburse Omsiv and sought to avoid that obligation by asserting claims for damages, raising objections, and taking other actions that were without any substantial justification. Accordingly, the chancellor did not abuse his discretion by awarding Omsiv part of the attorney's fees that it incurred in the course of the dispute.

## CONCLUSION

13

¶26.    For the foregoing reasons, we reverse the chancellor's decision not to award Main Street damages for trespass and render judgment for nominal damages in the amount of $10. We affirm the chancellor's award of attorney's fees.

¶27.    **THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT, IS REVERSED AND RENDERED IN PART AND AFFIRMED IN PART.  ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY TO THE APPELLANT AND THE APPELLEE.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR AND GREENLEE, JJ., CONCUR.  JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**