734 So.2d 269 (1999)
LaJennifer J. HARBIN, Appellant,
v.
Johnny JENNINGS; HFAC-1, Inc. f/k/a National Picture and Frame Company; and NPF Company f/k/a National Picture and Frame Company f/k/a NPF Acquisition Company f/k/a National Picture and Frame Company, Appellees.
No. 95-CA-01355 COA.
Court of Appeals of Mississippi.
February 9, 1999.
*270 Gail S. Akin, Robert C. Boyd, Jackson, Attorneys for Appellant.
Tom P. Calhoun III, F. Ewin Henson, Greenwood, Attorneys for Appellees.
EN BANC.
McMILLIN, P.J., for the Court:
¶ 1. This Court is called upon today to consider an appeal and cross-appeal arising out of an invasion of privacy suit tried in the Circuit Court of Leflore County. After a jury returned a verdict awarding both actual and punitive damages to the plaintiff, the trial court ordered a partial remittitur of both awards. The plaintiff has appealed the remittitur and the defendants have cross-appealed, attacking the validity of the jury's verdict on several different grounds. We conclude that certain issues raised in the cross appeal have merit and that the judgment in this case must be reversed and the matter remanded for further proceedings. This decision renders the issues raised in the direct appeal moot.

I.

Facts
¶ 2. Gail Jones engaged the services of the defendant, Johnny Jennings, a professional *271 portrait photographer, to take a series of photographs of her minor daughter, LaJennifer Harbin, to commemorate Harbin's status as a high school senior. Harbin is the plaintiff in this proceeding and Jennings is one of the defendants. Harbin, her mother and Harbin's sister attended the photography session. Jennings later submitted proofs and one photograph was selected to be used as Harbin's senior portrait in her high school yearbook.
¶ 3. Some time later, Jennings had a chance encounter with Jones, Harbin's mother, at which time he told her that a picture frame company had seen a print of Harbin's photograph and had expressed an interest in using prints of the photograph in frames produced by the company for retail sale to the general public. That company ultimately proved to be National Picture and Frame Company, an additional defendant in this action. Jennings claimed that Jones expressed pleasure with this possibility and offered the opinion that her daughter would also be pleased. Jones admits being initially pleased with the prospect but claims that, during the conversation, Jennings informed her that, in order for the photograph to be used, it would be necessary for release documents to be signed. Jennings denied mentioning the need for a written release during this conversation.
¶ 4. These events all occurred between November 1990 and January 1991. Neither Jones or Harbin heard anything further from Jennings on the matter. In 1993, Jones learned for the first time that National Picture had been using the photograph as an insert in a line of picture frames and that as many as a thousand reproductions of Harbin's likeness had been produced and inserted into picture frames that were then sold by National Picture to retailers for ultimate sale to the general public. Jones informed her daughter, Harbin, of this fact. According to Jones's testimony, the news substantially upset her and led to a long period of mental and emotional anguish. Harbin's emotional distress included, according to her testimony, an inability to sleep, fluctuations in her weight, and extended periods of obsessing over the possible negative consequences of the widespread dissemination of her likeness. Included in her obsessive thinking, according to her testimony, was the fact that she had intended to work in the field of juvenile counseling, and she worried that, if the juveniles with whom she was working became aware that her likeness had appeared in public in this manner, it might somehow prove detrimental to the effectiveness of her work. She also expressed the fear that people seeing her likeness in the picture frames in this context might be led to believe, incorrectly, that she was vain and self-absorbed.
¶ 5. The proof showed that National Picture paid Jennings the sum of one hundred dollars for the right to use Harbin's photograph in its frames. Jennings defended the suit by claiming affirmatively that he had permission to license the use of the photograph in this manner by virtue of a receipt which he claims was issued and accepted on Harbin's behalf at the time of the shoot. The receipt form introduced into evidence contained the following language in small print at the bottom: "The studio reserves the right to use negatives and/or reproductions for display, publication, or other purposes." Below that is a signature and date line that says "Order approved by." There is no date entered on the form and it is unsigned, but appears to contain two initials. Both Harbin and her mother deny initialing the receipt form and Jennings, in his testimony, was unable to say who had placed the initials on the form except to say it had to have been either Harbin, Harbin's mother, or Harbin's older sister, since they were the only persons in attendance at the time the form was initialed.
¶ 6. The National Picture official who selected Harbin's photograph for use testified that he saw it for the first time in an informal setting at Jennings's residence and that Jennings had suggested the use *272 of the photograph in this manner. This official testified that it was standard practice in such situation to rely upon the photographer furnishing the photograph to obtain evidence of permission, normally in the form of a written release, and that generally National Picture would request a copy of the release for its file before proceeding to use a particular photograph. He indicated, however, that another company employee was actually responsible for these matters, and, though this witness identified Jennings's receipt as the release relied upon by National Picture, he was unable, of his own knowledge, to state when the company had actually come into possession of a copy of the instrument. The specific employee charged with such responsibilities did not testify at trial.
¶ 7. At the conclusion of the evidence phase of the trial, the trial court granted a directed verdict as to liability against both defendants, finding that there was no genuine issue of fact as to whether National Picture's use of Harbin's photograph for commercial purposes was undertaken with Harbin's permission. The trial court then decided that, because liability was no longer an issue, it was unnecessary to bifurcate the trial to have separate deliberations of actual damages and punitive damages. In the process of doing so, he denied an instruction requested by the defendants that would have permitted the jury to return a verdict for nominal damages only.
¶ 8. The jury returned a verdict of actual damages in the amount of $25,000 against all defendants and awarded punitive damages of $25,000 against Jennings and a separate punitive damage award of $25,000 against National Picture. The trial court subsequently granted a remittitur of $15,000 of the actual damages and $15,000 each from the punitive damage awards; thereby reducing the recovery to $10,000 actual and $20,000 punitive damages. It is from that order for remittitur that Harbin perfected this appeal, and the defendants' cross-appeals followed.
¶ 9. Because our consideration of the issues raised in the cross-appeals convinces us that the judgment cannot stand, whether in the original amount returned by the jury or in the reduced amount ordered by the trial court, we consider first those matters raised on cross-appeal.

II.

The Directed Verdict on Liability
¶ 10. We cannot see that the trial court was in error in its decision that Harbin was entitled to a directed verdict of liability at the conclusion of the evidence. Mississippi recognizes the tort of intentional invasion of privacy. Candebat v. Flanagan, 487 So.2d 207, 209 (Miss.1986). One of the classic forms of such invasion of privacy is the appropriation, without consent, of the likeness of another for use in a commercial enterprise. Id.; Deaton v. Delta Democrat Publ'g. Co., 326 So.2d 471, 473 (Miss.1976). The use of Harbin's photograph in thousands of picture frames to be widely distributed and displayed in numerous retail sales establishments seems to this Court to be a textbook example of a claim of this nature so long as the use of Harbin's likeness was without her permission.
¶ 11. Harbin, in her case-in-chief, presented credible evidence that she did not extend such permission and that she was, in fact, unaware of the use of her photograph in this manner for a number of years after the use was commenced. Since Harbin was a minor at the critical times involved in this litigation, there was the added possibility that permission may have been granted by her mother and natural guardian, Gayle Jones. However, Jones also testified that, though she was pleased when she heard of the possibility that Harbin's photograph might be used in this way, she never affirmatively extended such permission to Jennings or to National Picture.
¶ 12. Jennings, for his part, relied solely on the language in the receipt form that *273 was quoted above as constituting authorization for him to license the use of Harbin's photograph to National Picture. However, Jennings admitted that he did not know who placed the cryptic initials on the receipt form. He only asserts that it must have been either Harbin, or Jones, or Harbin's sister. He even speculated that one of the initials was written by Harbin and one by Jones. The problem with this proof is self-evident. Harbin was a minor at the time and there is a serious issue of law as to whether she was capable of giving such consent. There is no legitimate issue that Harbin's sister, though she may have reached her majority, had legal authority to issue such permission on behalf of her minor sister. Thus, even when viewed in the light most favorable to Jennings, there is no evidence that would permit the jury to find, by a preponderance of the evidence, that Harbin's mother executed the instrument under circumstances that would demonstrate her intention to release Harbin's photograph for use in National Picture's business undertakings.
¶ 13. National Picture does not contend that it obtained a separate grant of permission from Harbin. Instead, this defendant relied solely on the argument that such use of Harbin's likeness was contemplated and covered within the scope of permission obtained by Jennings. Since the proof that Jennings had any permission to use Harbin's photograph for commercial purposes is non-existent, National Picture's claim that its derivative right of permission is without foundation in the evidence.

III.

The Issue of Actual Damages
¶ 14. Our decision that the trial court was correct in granting a directed verdict on liability needs some further comment. Invasion of privacy in the manner alleged and proven by Harbin is a wilful tort. There is a significant distinction that can be drawn between the necessary elements to prove a claim based on a wilful tort and the elements necessary to establish a claim of tort liability in the more common area where negligence rather than wilful misconduct is at issue. To establish liability for a claim sounding in negligence, the plaintiff must show a duty owed by the defendant to the plaintiff, that there was a breach of that duty by the defendant, and that the breach proximately caused an injury to the plaintiff. Lyle v. Mladinich, 584 So.2d 397, 398-99 (Miss.1991). Thus, even when the trial court directs a verdict for the plaintiff on liability in a negligence action, it necessarily follows that the trial court has concluded that the plaintiff has proven an injury with such certainty that no reasonable jury could find otherwise. At that point, the trial court properly submits the limited question to the jury of the proper amount of damages to compensate the plaintiff for that injury.
¶ 15. The difference between that process and a claim involving a wilful tort is that, in the case of a recognized wilful tort, an actual injury is not essential to establish a case of liability. Bumgart v. Bailey, 247 Miss. 604, 607-08, 156 So.2d 823, 824-25 (1963). Because wilful torts involve a conscious act by the defendant undertaken in disregard of the plaintiff's rights, the law contemplates that a plaintiff is entitled to formal redress for the wrong committed against him even if he cannot demonstrate by a preponderance of the evidence that he suffered an actual injury as a result. Id.
¶ 16. The procedure for redress afforded by the law to a plaintiff who has been intentionally wronged without demonstrable injury is to award the plaintiff a judgment granting only nominal damages. ACI Chem. Inc. v. Metaplex, Inc., 615 So.2d 1192, 1202 (Miss.1993).
¶ 17. In this case, Harbin does not claim any actual damage except for emotional distress. She did not claim that her distress manifested itself in any outward way beyond causing periods of sleeplessness, *274 periods of irritability, and an inability to maintain a standard body weight. She presented no medical or psychological expert testimony to establish any diagnosis of a significant emotional disturbance or disorder. The case law in this State indicates that claims of injury consisting solely of emotional distress, in order to be compensable, must show something beyond the kinds of discomforts Harbin related. In Morrison v. Means, for example, the supreme court said that evidence consisting solely of a claim of sleeplessness and mental anguish did not demonstrate an actual injury with sufficient certainty to warrant compensation. Morrison v. Means, 680 So.2d 803, 806-07 (Miss.1996). In Wong v. Stripling, the court sustained summary judgment in favor of the defendant, saying that a claim of outraged feelings, even if proven, did not constitute a compensable injury. Wong v. Stripling, 700 So.2d 296 (¶ 52) (Miss.1997). There is the added problem that, even when mental anguish is proven, it apparently must be of "a kind that normally results from such invasion." Candebat, 487 So.2d at 211 (quoting RESTATEMENT (SECOND) OF TORTS § 652(H)). Harbin claims to have obsessed over whether future juveniles with whom she might come in contact in her anticipated profession might become aware of the picture's use and that this might cause her to lose the necessary rapport to accomplish her work. It is, at best, a doubtful proposition that such an obsession could be classed as one normally resulting from an invasion of this nature. In light of these considerations, it is a close question, when the totality of Harbin's proof on damages is reviewed, whether she presented enough evidence to establish that her emotional distress was significant enough to warrant an award of any actual damages. It was not within the prerogative of the trial court to say that her proof was sufficient, as a matter of law, to demonstrate some actual compensable injury. That threshold issue was, on this evidence, just as much a matter to be resolved by the jury as was the second issue of determining assuming that the first issue was resolved favorably to Harbinwhat the proper measure of those damages were.
¶ 18. Thus, though the trial court was correct in granting a directed verdict on liability, it was correct only because proof of actual injury is not an essential element of liability for a wilful tort such as the one involved in this case. Having determined that there was no legitimate issue of fact as to whether these defendants had, acting in combination, appropriated Harbin's likeness without her permission and used it in a commercial undertaking, the trial court should properly at that point have submitted to the jury a two-fold fact question of (a) whether Harbin suffered an actual injury, and (b) if so, in what amount.
¶ 19. The proper procedural vehicle for submitting those fact-based determinations to the jury would have been to instruct the jury that, if it concluded that Harbin had failed to meet her burden of demonstrating actual injury by a preponderance of the evidence, it should return a verdict for nominal damages only to serve as vindication for the defendants' wilful wrong. The record indicates that the defendants did, in fact, request a nominal damage instruction but that the trial court refused to give it, apparently operating under the mistaken impression that, if the elements of the tort were proven with sufficient certainty that a reasonable jury would be bound to accept them as true, Harbin would be entitled to some measure of actual damages. Since that is not the case, for reasons we have set out, and since the defendants properly preserved the issue on appeal, we determine that the failure to instruct on nominal damages was reversible error.

IV.

Punitive Damages
¶ 20. Had the jury been properly instructed, it would have been within the province of the jury to determine that Harbin was not entitled to recover any actual damages. The existence of actual *275 damages is, in Mississippi, a necessary prerequisite to the jury's right to consider and assess punitive damages. Herrington v. Spell, 692 So.2d 93, 104 (Miss.1997); Hopewell Enters., Inc. v. Trustmark Nat'l Bank, 680 So.2d 812, 820 (Miss.1996). In 1993, the Mississippi Legislature directed by statute that punitive damages might properly be considered only as a separate issue after the jury had determined the plaintiff's entitlement to actual damages and had assessed the amount of such actual damages. Miss.Code Ann. § 11-1-65 (Supp.1997). The statute provides a bifurcated proceeding and specifically states that "the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages." Miss.Code Ann. § 11-1-65(b) (Supp.1997).
¶ 21. The trial court's decision to permit the jury to consider both aspects of damages at the same time at a point when, if the jury had been properly instructed, the issue of "whether compensatory damages are to be awarded" had not been resolved was in direct contravention of the statute, and, therefore, error. This particular error is resolved by the fact that we are reversing all aspects of the jury's verdict. We direct the trial court to avoid the same error in the event of a retrial.

V.

Conclusion
¶ 22. These defendants, acting in combination, participated in acts sufficient to establish their joint responsibility for appropriating Harbin's photographic likeness to a commercial undertaking without her consent. Both defendants benefitted economically from their actions and both may be made to answer for what is recognized as the wilful tort of invasion of privacy. Nevertheless, Harbin's proof of damages was restricted solely to a claim for emotional distress for this misuse of her photograph. On the proof in the record, there is a significant question of fact as to whether Harbin's proof of her emotional damage was enough to merit an award of actual damages. The trial court erred when it instructed the jury that, as a matter of law, the proof demonstrated some amount of actual damage and that the jury's sole question was to determine the proper amount. The trial court should properly have instructed the jury as to the circumstances under which it might return a verdict for nominal damages only, even though the defendants' actual commission of the tort of invasion of privacy was no longer in issue. The trial court further erred in permitting the jury to consider the separate issues of actual damages and punitive damages at the same time in violation of section 11-1-65 of the Mississippi Code.
¶ 23. These conclusions require us to reverse the present judgment and remand for further proceedings consistent with the terms of this opinion. This has the effect of rendering moot the issues raised by Harbin in her direct appeal and we, therefore, decline to consider the propriety of the trial court's conditional order for remittitur.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF LEFLORE COUNTY IS REVERSED ON THE CROSS-APPEAL AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., THOMAS, P.J., COLEMALN, DIAZ, KING, PAYNE, and SOUTHWICK, JJ., CONCUR.
IRVING and LEE, JJ., NOT PARTICIPATING.