# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-CA-01545-SCT

*HEATHER GAMBLE, A MINOR, BY AND
THROUGH HER MOTHER AND ADULT NEXT
FRIEND, REBECCA GAMBLE*

*v.*

*DOLLAR GENERAL CORPORATION, A
TENNESSEE CORPORATION, AND SHERI
THORNTON*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 08/14/2000 |
| TRIAL JUDGE: | HON. MICHAEL R. EUBANKS |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | J. ANDREW PHELPS |
| | MARK THOMAS FINCH |
| ATTORNEYS FOR APPELLEES: | WILLIAM E. READY, JR. |
| | NEIL A. MORRIS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 08/07/2003 |
| MOTION FOR REHEARING FILED: | 08/29/2002 |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing is granted. The original opinions are withdrawn, and these opinions are substituted therefor. Part I of this opinion addresses the issue of compensatory damages and other issues arising in the compensatory stage of trial by Gamble on direct appeal and Dollar General on cross-appeal. Part II of this opinion addresses the issue of punitive damages by Dollar General on cross-appeal.

¶2.    On April 6, 1999, Heather Gamble filed a complaint against Dollar General Corporation and Sherry Thornton in the Circuit Court of Lamar County, Mississippi, seeking compensatory and punitive damages for assault, negligence, intentional and/or negligent infliction of mental and emotional distress and anguish, wrongful detention and arrest, and outrage and slander. Gamble alleged that Thornton, an employee of Dollar General, followed her from the Dollar General store to the parking area of a Family Dollar store, where she accused Gamble of shoplifting and grabbed Gamble by her underwear.

¶3.    On April 25, 2000, Gamble filed an amended complaint, adding a claim for fraud, bad faith and breach of fiduciary duties based on Dollar General's failure to disclose in discovery that Dollar General had relevant insurance coverage in the amount of $102,000,000.00. In particular, Gamble claims that Dollar General represented that it was self-insured and concealed the relevant insurance coverage until after mediation had taken place. The amended claim was severed before trial.

¶4.    The trial began on May 1, 2000. Jury instructions were refused for false arrest, wrongful detention, defamation/slander, and the tort of outrage. The jury was instructed on assault, negligent supervision/training, negligent and intentional infliction of emotional distress, and punitive damages. The jury returned a verdict against Thornton and Dollar General for actual damages in the amount of $75,000, and, after additional instructions, the jury returned a verdict in favor of Gamble against Dollar General in the amount of $100,000 in punitive damages. On August 14, 2000, in response to Dollar General's motion to dismiss the amended claims, the circuit court, Honorable Michael Eubanks presiding, entered an order dismissing the amended claim. Gamble now asks that this Court reverse the trial court's dismissal of her claims for fraud, bad faith, and breach of fiduciary duties. On cross-appeal, Dollar General, based on several allegations of error, asks that this Court reverse the judgment entered on the jury verdict in favor

of Gamble and enter a judgment for Dollar General and Thornton, order a new trial on damages, vacate and reverse the award of punitive damages, and/or order a substantial remittitur of Gamble's damages.

<strong><u>FACTS</u></strong>

¶5.    The following facts are relevant as to Gamble's appeal.  Gamble filed her complaint on April 6, 1999, demanding actual and punitive damages in excess of $2,500 against Dollar General and Sherry Thornton.  On August 25, 1999, Dollar General responded to Gamble's first set of interrogatories. Interrogatory Number 8 asked Dollar General to state whether it was a named insured on any insurance policy that might provide coverage as to the allegations in the complaint; also, the interrogatory requested disclosure of the extent of liability coverage provided by that policy on the date of the incident.  Dollar General responded by stating that "[t]his [a]nswering defendant is self-insured."  The response was stated under oath by the claims manager, Michelle Hughes.  For approximately 4 hours on October 15, 1999, the parties attempted mediation but were unsuccessful.  Hughes was present at the mediation.

¶6.    On November 1, 1999, Dollar General filed its Third Supplemental Response to Interrogatory Number 8, again under the oath of Hughes, stating that Dollar General was self-insured up to the combined single limit deductible of $500,000, with a commercial general liability aggregate of $2,000,000, as well as an overlapping punitive damages wrap-around policy.  The $2,000,000 policy was attached.  The second supplemental response to Interrogatory 8 is not at issue.  On the same day, at a deposition, Michelle Hughes stated that on August 25, 1999, the day she answered Gamble's interrogatories, she was aware of an additional or excess policy. Based on these facts, the circuit court permitted Gamble to amend her complaint to include the fraud claims.  On August 14, 2000, the trial court dismissed Gamble's claims for fraud.

3

¶7. The remaining facts are relevant as to Dollar General's cross-appeal. On March 19, 1999, at about noon, Gamble, a nineteen-year-old college student, stopped by the Dollar General store in Purvis, Mississippi, to purchase a shirt to wear to work. She stated that she needed a new shirt because she had soiled her shirt with oil pastels while in art class at Pearl River Community College. Gamble did not find anything at the Dollar General and proceeded to the Family Dollar store to look for a shirt. Upon leaving the Dollar General store, Gamble observed that a Dollar General employee had rushed up behind her car to write something down, as if she were writing down her license tag number.

¶8. After Gamble arrived at the Family Dollar store, she noticed that the same individual who wrote down her tag number had followed her to the Family Dollar store and parked directly behind her, blocking her vehicle. At this point, Gamble asked the "angry-looking" individual, Thornton, why she was following her and why she had taken down her tag number. Thornton approached Gamble and asked her what she had in her pants. Gamble thought she may have had an outline from class in her back pocket, so she reached in her back pocket but had nothing. Thornton then grabbed at Gamble's panties from the back of her pants and tugged on them. At this point, it became obvious to Gamble that Thornton was accusing her of shoplifting. The two exchanged a few words, and Thornton left, satisfied that Gamble had not shoplifted.

¶9. Gamble went to the police station to report the incident. The police officers told Gamble that they would investigate the incident and speak with Thornton. The officers testified that Gamble was extremely upset and crying because of the incident. Testimony from Gamble's parents and a friend of Gamble's was also presented to the jury. Gamble testified that she felt like she had been assaulted and humiliated by Thornton. She stated that no one from Dollar General had ever apologized to her for the incident. She

testified that the incident has upset her emotionally, has affected her grades, has caused her to suffer from insomnia about four nights a week and has caused her embarrassment.

## DISCUSSION

¶10.    In regards to Gamble's amended claim, "the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim." *Butler v. Board of Supervisors*, 659 So. 2d 578, 581 (Miss. 1995).  When considering a motion to dismiss for failure to state a claim, this Court reviews the claim de novo.  *Sennett v. United States Fid. & Guar. Co.*, 757 So. 2d 206, 209 (Miss. 2000).

PART I: Compensatory Damages

### A. ISSUES ON APPEAL

I.    **WHETHER THE TRIAL COURT ERRED IN DISMISSING GAMBLE'S CLAIM FOR FRAUD, BAD FAITH AND BREACH OF FIDUCIARY DUTIES.**

¶11.    This Court has not addressed this issue in any previous cases.  Gamble argues that when parties are involved in mediation, the opposing party has a duty to act in good faith in seeking and participating in mediation.  The opposing party, according to Gamble, must not use mediation as a tactic to delay trial or to determine the strengths and weaknesses of the opposition.

¶12.    The elements of fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speakers intent that the representation be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on the representation's truth; (8) the hearer's right to rely thereon; and, (9) the hearer's consequent and proximate damages.  *Allen v. Mac Tools, Inc.*, 671 So. 2d 636, 642 (Miss. 1996). Gamble argues that Dollar General's concealment of relevant insurance coverage rises to the level of

5

misrepresentation and concealment that would entitle Gamble to a cause of action based on fraud. Gamble alleges that the misrepresentation by Dollar General has caused detriment to Gamble in the form of four hours of wasted time, the loss of an opportunity for a successful mediation, additional stress and an unfair opportunity for Dollar General to measure the strengths and weaknesses of Gamble's case at mediation. Gamble also argues that because Dollar General did not file a response to her amended complaint, by rule, Gamble's amended allegation should have been recognized as admitted.

¶13. On the other hand, Dollar General argues that under M.R.C.P. 12(b), Dollar General had the option of either filing an answer to the amended claims or filing a motion to dismiss. Dollar General argues that Gamble's cause of action lacks any reasonable basis in law and is entirely without merit. Dollar General filed a motion for Rule 11 sanctions against Gamble for filing a frivolous cause of action. M.R.C.P. 11. The circuit court denied Dollar General's motion for sanctions. Dollar General instead asks that this Court sanction Gamble for her conduct and for raising a frivolous appeal.

¶14. This Court affirms the dismissal of Gamble's claim for fraud. Other than her reference to the general law on fraud, Gamble has presented no meaningful arguments and no legal support for a civil claim with regard to misrepresentations in discovery. The proper course of action for Gamble would have been to seek recourse under the discovery rules themselves. Recourse for violations of discovery rules is set forth in the Mississippi Rules of Civil Procedure. *See* M.R.C.P. 37.

**B. ISSUES ON CROSS-APPEAL**

¶15. A trial court should only grant a motion for a new trial if it believes the jury verdict is against the overwhelming weight of the evidence or is contrary to the law. *Allstate Ins. Co. v. McGory*, 697 So. 2d 1171, 1174 (Miss. 1997). This Court will not overturn a denial of a motion for new trial unless the trial judge abused his discretion. *Gleeton v. State*, 716 So. 2d 1083, 1089 (Miss. 1998).

## I.  DID THE TRIAL COURT ERR BY NOT REQUIRING GAMBLE TO CALL A MEDICAL EXPERT TO ESTABLISH CAUSATION OF HER INSOMNIA, HEADACHES AND RESULTING DAMAGES?

¶16.    Dollar General presented a motion in limine requesting that the trial court not allow Gamble to testify that she experienced insomnia as a result of Dollar General and Thornton's conduct.  The trial court denied the motion finding that expert testimony was not required to prove that the victim of an intentional tort suffered mental anguish because the trier of fact has some expertise with regard to mental anguish.

¶17.    Dollar General argues that Gamble's testimony that the incident has caused her loss of sleep was not admissible because Gamble was treated for insomnia sometime in 1997, prior to the incident at issue. Also, Dollar General asserts that insomnia is a medical condition which requires proof by expert testimony. Dollar General believes that Gamble's testimony that she was emotionally upset or experienced a loss of sleep is insufficient to support an award of compensatory damages, and that expert testimony is required to establish a causal connection between the insomnia and the incident in question.  Also, Dollar General claims that Gamble's emotional distress was only momentary.

¶18.    Where there is resulting physical harm or mental assault, requiring treatment by the medical profession, a legal cause of action can exist.  ***Summers ex rel. Dawson v. St. Andrew's Episcopal Sch., Inc.***, 759 So. 2d 1203, 1211-12 (Miss. 2000) (citing ***Sears Roebuck & Co. v. Devers***, 405 So. 2d 898, 902 (Miss. 1981)).  "Mental anguish is a nebulous concept ... and requires substantial proof for recovery." ***Morrison v. Means***, 680 So. 2d 803, 805 (Miss. 1996).

¶19.    Where there is no physical injury, recovery for mental anguish can be appropriate under certain circumstances when the defendant's conduct evokes outrage or revulsion. ***Summers***, 759 So.2d at 1211. Furthermore, expert testimony showing actual harm or proof of physical or mental injury is not always required.   Where there are claims involving only sleeplessness, mental anguish, and humiliation,

compensatory damages can be awarded based "on the nature of the incident from which the damages flow." *Whitten v. Cox*, 799 So. 2d 1, 10-11 (Miss. 2000). In cases in which there is evidence of willful, wanton, malicious, outrageous or intentional wrongs, and where mental or emotional stress is a foreseeable result of the conduct of the defendant, a court can assess damages for mental and emotional distress. *Adams v. U.S. Homecrafters, Inc.* 744 So. 2d 736, 743 (Miss. 1999) (a claim of mental anguish based on simple negligence did not require evidence of physical manifestation). *See also American Bankers' Ins. Co. v. Wells*, 819 So.2d 1196, 1208-09 (Miss. 2001); *Mississippi Valley Gas Co. v. Estate of Walker*, 725 So.2d 139, 148 (Miss.1998); *Means*, 680 So.2d at 806; *Devers*, 405 So. 2d at 902; *Lyons v. Zale Jewelry Co.*, 246 Miss. 139, 149, 150 So.2d 154, 158 (1963). "If there is outrageous conduct, no injury is required for the recovery of infliction of emotional distress or mental anguish." *Means*, 680 So.2d at 806 (citing *Leaf River Prods. Inc. v. Ferguson,* 662 So. 2d 648, 659 (Miss. 1995). The plaintiff does not have to present further proof of injury. The nature of the act itself, rather than the seriousness of the consequences, can justify an award for compensatory damages. *Devers*, 405 So. 2d at 902.

¶20.     In the instant case, the jury was instructed on whether the defendants' conduct rose to the level of assault and intentional infliction of emotional distress, not just ordinary negligence. The question to ask is whether the facts justify more than nominal damages. *Whitten*, 799 So. 2d at 10. The issue boils down to a credibility issue for the jury with regard to the offensive, outrageous, injurious or malicious nature of Thornton's conduct when she assaulted Gamble and caused her mental distress.

¶21.     This Court distinguished the facts in *Whitten* from other cases involving claims of mental anguish and infliction of emotional distress because in *Whitten* the conduct "amounted to more than a mere

'discomfort.'" *Id.* In *Whitten*, the plaintiffs were confronted by an armed man who fired several shots, pointed his weapon at the men, handcuffed one of the plaintiffs, and pulled one plaintiff's cap down over his eyes. *Id.* at 6-7. In *Harbin*, an example of a case in which the facts only amounted to mere annoyance or discomfort, the Court of Appeals found that a high school student who sued a photographer for alleged invasion of privacy, for use of a photograph without permission, did not suffer harm which would be compensable. *Harbin v. Jennings*, 734 So. 2d 269, 273 (Miss. Ct. App. 1999). In *Means*, this Court determined that failed expectations and mutual misunderstandings could not give rise to an award for damages for emotional distress. *Means*, 680 So. 2d at 804.

¶22. In *Morgan v. Loyacomo*, 190 Miss. 656, 1 So. 2d 510 (1941) the appellants were the operators of about forty eight retail stores. The appellee purchased an article of underwear, paid for it, and departed the store. *Id.* The manager of the store witnessed the purchase but became suspicious that the appellee had taken away two garments but had only paid for one garment. *Id.* The manager left the store and followed the appellee a block away from the store. *Id.* at 511. The manager called to the appellee, while in the presence of others, and stated that he needed to investigate whether she had taken two garments instead of one. *Id.* The manager forcibly seized the package and examined it, only to discover that he had made a mistake. *Id.* This Court found that an assault had been committed and that the award of damages was not excessive. *Id.* This Court stated that our courts should not tolerate such conduct. *Id.* In the instant case, although there was no testimony that anyone witnessed the incident, based on the record, the conduct of Dollar General's employee appears to be just as offensive, if not more offensive than the employee's conduct in *Morgan*.

¶23. The facts in the instant case are more akin to the facts in **Whitten** and **Morgan**. The conduct in the present case was confrontational, physical, demeaning, and embarrassing enough such that compensatory damages were appropriately considered by the jury. This Court can not say that the trial judge erred in allowing the issue of compensatory damages to go to a jury.

¶24. Dollar General argues that the facts of this case and the momentary touching of Gamble could not result in the type of emotional distress that justifies an award for more than nominal damages. Dollar General believes that Gamble could only have been momentarily upset over the incident. This Court has held that a plaintiff who asserts a claim for mental anguish, whether as a result of negligence or an intentional tort must prove that the emotional distress was a reasonably foreseeable result of the defendant's conduct. **Morgan v. Greenwaldt**, 786 So. 2d. 1037, 1044 (Miss. 2001). Under the facts of this case, a reasonable jury could find that Dollar General's conduct toward Gamble could result in the type of emotional distress described by Gamble.

¶25. Dollar General also claims that it suffered prejudice due to the trial court's failure to strike testimony that indicated Gamble's headaches were cause by the incident. Gamble testified that she suffered headaches for a period of time after the accident, beginning in November of 1999, and that her doctors told her the headaches were probably stress related. She also testified that she has had headache problems recently. However, Gamble did not testify that her headaches were caused by the incident. She testified that she has been under stress because of the incident with Dollar General, but she confirmed that no doctor has stated that the headaches might be caused by the incident. This Court finds that Gamble did not testify to any stress related injury that had to be confirmed by an expert. Furthermore, a layperson could determine whether the conduct of Dollar General was outrageous enough to cause stress and insomnia.

10

¶26. Dollar General also adds that Gamble's encounter with Thornton and the touching that occurred was not traumatic enough to support a claim of mental anguish. Based on a review of the record, there was sufficient evidence offered at trial to present a jury question as to whether the conduct by Thornton supported Gamble's claim that she suffered mental anguish. This issue is without merit.

## II. DID GAMBLE ESTABLISH A PRIMA FACIE CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS?

¶27. Dollar General asserts that because Gamble continued shopping, went to work, and never sought medical treatment, that she could not have met her burden for proving intentional infliction of emotional distress. Gamble testified that she was too upset to stay at work and went home early that day. Dollar General asserts that Gamble must present substantial proof to prevail on a claim of intentional emotional distress. *Means*, 680 So. 2d at 805. The facts in the instant case are sufficiently outrageous to present a jury issue as to whether Gamble suffered intentional infliction of emotional distress. Based on a review of the record, there was substantial evidence presented for Gamble to prevail on her claims. This issue is without merit.

## III. DID THE TRIAL COURT ERR IN GRANTING ITS INSTRUCTION 14A?

¶28. Instruction 14A states as follows:

If you find from a preponderance of the evidence that the actions and/or omissions of Sheri Thornton or any other employee of the Defendant corporation were performed either intentionally in an effort to cause Heather Gamble to sustain and experience mental and emotional distress and anguish or that said actions and/or omissions on the part of the Defendants were performed negligently which resulted in mental and emotional distress and anguish being suffered by Heather Gamble, which distress and anguish were reasonably foreseeable results of Defendant's Conduct, then your verdict shall be for the Plaintiff as to said claim. However, if you find that the Plaintiff has failed to prove these elements by a preponderance of the evidence, then your verdict shall be for the Defendants as to said count.

11

Dollar General states that this instruction is a misstatement of the law and that it improperly fails to distinguish between the standards for proving the elements of intentional infliction of emotional distress and the elements of negligent infliction of emotional distress. Dollar General offers no legal support for its determination that Instruction 14A was improper. This Court finds that Jury Instruction 14A sufficiently instructs the jury as to the elements for proving each claim. This issue lacks merit.

## IV. DID THE TRIAL COURT ERR IN ALLOWING THE JURY TO CONSIDER THE CLAIM OF NEGLIGENT TRAINING.

¶29. Dollar General argues that the jury should not have been allowed to hear Gamble's claim of negligent training. Dollar General had a written shoplifting policy that stated that no employee should leave a store to go after a suspected shoplifter and no employee should ever touch a shoplifter. Dollar General argues that this policy was provided to Thornton and that she read and understood the policy. Gamble asserted at trial that merely providing the policy to Thornton, without actually providing any training, was sufficient evidence to establish a claim of negligent training.

¶30. Dollar General asserts that Mississippi law requires the plaintiff to call an expert witness on retail store shoplifting procedures in order to establish that Dollar General's training was inadequate and negligent. Dollar General cites M.R.E. 703 and **Langston v. Kidder**, 670 So. 2d 1, 3 (Miss. 1995). However, neither of these authorities establishes a rule that Gamble must produce expert witnesses to establish that Thornton did not receive training or that the lack of training was negligence.

¶31. Gamble has simply misstated her issue with regard to her claim for negligent training. Instead of claiming that Dollar General's training was inadequate or negligent, Gamble's claim is better understood as an allegation that Dollar General provided no training. Stated as an issue of no training, the jury could infer

Dollar General's negligence without the need of expert testimony on proper or adequate training. The jury could properly find that Dollar General was negligent in failing to provide training to Thornton.

¶32. There was also testimony that Thornton, a regional manager, was required to go to other stores to train employees in dealing with shoplifting. However, other than receiving a booklet, there was no evidence that showed that Thornton had received any training. Based on Dollar General's failure to show any training provided to Thornton, other than handing her a manual, it was proper to allow the jury to consider the issue of negligence for Dollar General's failure to train its employee. This issues is without merit.

## V.      DID THE TRIAL COURT ERR IN ALLOWING THE JURY TO CONSIDER THE ASSAULT CLAIM.

¶33. Dollar General asserts that there was no evidence to warrant a jury instruction on assault. Dollar General's brief does not contain any meaningful arguments in support of this issue. Dollar General simply states that it does not believe the facts give rise to a claim for assault. The trial court stated that there was no question that there was an issue of assault in this case. Thornton's act of following Gamble and impermissibly yanking Gamble's underwear, to see if they were shoplifted, were sufficient facts to warrant a jury's consideration as to the tort of assault. Therefore, this issue is without merit.

¶34. Dollar General also asserts that evidence regarding the wrongful detention issue and defamation issue were improperly presented to the jury. Dollar General does not make reference to any testimony that would support these assertions. Instructions as to these issues were not given to the jury, and based on a review of the record, no statements made to the jury would have led them to base their decision on the issues of wrongful detention and defamation.

PART II: Punitive Damages

## DID THE TRIAL COURT ERR IN ALLOWING THE JURY TO CONSIDER THE ISSUE OF PUNITIVE DAMAGES.

13

¶35. Dollar General claims it was error for Gamble to receive a judgment for punitive damages. The jury only awarded punitive damages against Dollar General. Sheri Thornton did not have punitive damages assessed against her.

¶36. In the punitive damage context, Miss. Code Ann. § 11-1-65 (1)(a) indicates a claimant must prove by "clear and convincing evidence that the defendant against whom punitive damages are sought acted with *actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud*." (emphasis added). The trial court, when faced with the issue of punitive damages, looks at the totality of the circumstances to determine if a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard. ***Ross-King-Walker, Inc. v. Henson***, 672 So.2d 1188, 1191 (Miss.1996). An abuse of discretion standard is implemented when this Court reviews the trial court's decision of whether a case warrants punitive damages to be sent to the trier of fact. ***Hurst v. Southwest Miss. Legal Servs. Corp.***, 708 So.2d 1347, 1351 (Miss.1998). The facts must be highly unusual as punitive damages are only awarded in extreme cases. ***Aqua-Culture Technologies, Ltd. v. Holly***, 677 So. 2d 171, 184 (Miss. 1996); ***South Cent. Bell v. Epps***, 509 So. 2d 886, 892 (Miss. 1987). There must be ruthless disregard for the rights of others, so as to take the case out of the ordinary rule. ***Fowler Butane Gas Co. v. Varner***, 244 Miss 130, 141 So. 2d 226 (1962). *See also* ***Fedders Corp. v. Boatright***, 493 So. 2d 301, 311 (Miss. 1986).

¶37. Although we found that Dollar General failed to provide additional training to its employees, we acknowledge that it did provide Thornton a manual. Dollar General had a written shoplifting policy that stated that no employee should leave a store to go after a suspected shoplifter and no employee should ever touch a shoplifter. Of significant importance, the record reflects that Thornton had received the manual,

14

yet ignored the policy. Thornton followed Gamble out of the store, wrote down her tag number, then confronted and touched her. Thornton testified that the store policy was "in black and white, and I should have known it and should have followed it, and just didn't. I mean, the policy is there in black and white for all the employees at Dollar General." Once Gamble left the store, Thornton should have considered the incident to be concluded. Thornton admitted to not following store policy. However, she, in effect, ignored the policy and followed Gamble from the store on her own initiative. It is inconceivable that under the facts of this case, Dollar General was assessed punitive damages. These acts were done by Thornton alone, violating the store policy.

¶38. No proof was offered to the jury that demonstrated Dollar General had any knowledge of prior incidents committed by this employee. Clearly, punitive damages against Dollar General should not have been allowed. Thornton was reprimanded for this mistake by Dollar General. More importantly, Dollar General had not received any other prior complaints or incidents regarding Thornton's alleged propensity for committing such acts as complained about here. Indeed, if such notice of prior complaints existed and Dollar General did not have a policy regarding shoplifting violations, then, and only then, would a punitive damages instruction have been warranted. The facts of this case do not warrant a punitive damage assessment. While Dollar General may have been negligent in its training, its actions do no rise to the level of actual malice or gross negligence. Accordingly, this Court reverses and renders the $100,000 punitive damages assessed against Dollar General.

## CONCLUSION

¶39. The trial court did not err in dismissing Gamble's claims for fraud, bad faith and breach of fiduciary duties. All of Dollar General's issues on cross-appeal are without merit with the exception of punitive damages. Therefore, to the extent that it awarded Gamble $100,000 in punitive damages against Dollar

15

General, the trial court's judgment is reversed and rendered. In all other respects, the trial court's judgment is affirmed.

¶40.    **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**PART I: AFFIRMED**

**PITTMAN, C.J., McRAE, P.J., AND GRAVES, J., CONCUR AS TO PART I. SMITH, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, COBB AND CARLSON, JJ. DIAZ, J., NOT PARTICIPATING.**

**PART II: REVERSED AND RENDERED**

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB AND CARLSON, JJ., CONCUR AS TO PART II. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. McRAE, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

**McRAE, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶41.    I concur with the affirmance of the compensatory damage award; however, considering the law of this State dealing with punitive damages in conjunction with the law of vicarious liability, I respectfully dissent from the majority's finding that the $100,000 punitive damages award should be overturned.

¶42.    The trial court found that the actions of Dollar General's employee, Thornton, did rise to the level of evincing a reckless disregard for the rights of the plaintiff. Additionally, the trial court stated that Dollar General's lack of training its employees on handling sensitive interactions with the public can be considered a proper issue for the jury to determine. I believe that there was sufficient evidence to present a jury question as to whether the failure to train evinced a wanton and reckless disregard for the rights of Gamble. There was also sufficient evidence to present a jury question as to whether the offensive nature of Thornton's conduct was outrageous enough to warrant an award for punitive damages. Punitive damages

based on Thornton's outrageous conduct would be properly imputed to Dollar General, as it is vicariously liable for the tortious actions of its employees. *Fruchter v. Lynch Oil Co.*, 522 So. 2d 195 (Miss. 1988).

¶43. Dollar General argues that punitive damages are only available in cases where the actions are extreme, citing *Central Bank of Mississippi v. Butler*, 517 So. 2d 507, 512 (Miss. 1987). I agree with this statement, however, I consider it an extreme situation when an employee of a store follows a customer to the parking lot of another store and grabs that customer by the underwear with the erroneous belief that she has stolen goods from her employer.

¶44. Dollar General also argues that its generous settlement offer and offering of a full apology at trial shows that it did not engage in intentional or reckless conduct. While this seems like a kind gesture, it in no way changes what occurred before this suit was brought.

¶45. On the instructions regarding assault and intentional infliction of emotional distress, a finding of punitive damages can be appropriately based on Dollar General's vicarious liability for the tortious actions of its employee, Thornton. *Fruchter*, 522 So. 2d at 195. Furthermore, as to the claim for negligence in failing to train, a finding of punitive damages would also be appropriate.

¶46. The combined actions of Thornton and Dollar General clearly amounted to an extreme situation which displayed a wanton and reckless disregard for the rights of Gamble. Thornton was acting on the behalf of her employer during this conflict. Any punitive damages assessed to Thornton's actions should undoubtedly have been imputed to her employer, Dollar General, under the law of vicarious liability. Based on the foregoing reasons, I respectfully dissent. I would affirm the submission of the issue of punitive damages to the jury, and I would also affirm the jury's reasonable and proportionate assessment thereof.

**GRAVES, J., JOINS THIS OPINION.**

17

**SMITH, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶47.    Having originally dissented on this issue, I applaud the  majority's decision on rehearing to reverse and render the award of punitive damages.  However, I write further to express my views regarding the application of controlling precedents of both our Court and the United States Supreme Court.

¶48.    The case at bar in my view represents mere simple negligence by a single individual who made a mistake in not following written store policy.  Thornton was reprimanded for this mistake by Dollar General. More importantly, Dollar General had not received any other prior complaints or incidents regarding Thornton's alleged propensity for committing such acts as complained about here.  Indeed, if such notice of prior complaints existed and Dollar General did not have a policy or failed to provide any training to employees regarding shoplifting violations, then, and only then, would a punitive damages instruction have been warranted.  Dollar General has over 40,000 employees, all of whom have been given a manual  and expected to read it and adhere to a specific policy regarding how to handle a suspected shoplifter.

¶49.    Punitive damages may only be awarded when a plaintiff offers clear and convincing evidence of actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or the commission of actual fraud.  Miss. Code Ann. § 11-1-65(1) (Supp. 2001).  None exist in the case at bar.  This Court has held that the totality of the circumstances must be examined when measuring  conduct complained of in order to determine if the reasonable trier of fact could find malice, gross negligence or reckless disregard. *Summers ex rel Dawson v. St. Andrew's Episcopal Sch., Inc.,* 759 So. 2d 1203, 1215 (Miss. 2000). The facts must be highly unusual as punitive damages are only awarded in extreme cases.  *Aqua-Culture Technologies, Ltd. v. Holly*, 677 So. 2d 171, 184 (Miss. 1996); *South Cent. Bell v. Epps*, 509 So. 2d 886, 892 (Miss. 1987).  There must be ruthless disregard

for the rights of others, so as to take the case out of the ordinary rule. *Fowler Butane Gas Co. v. Varner*, 244 Miss 130, 141 So. 2d 226 (1962). *See also Fedders Corp. v. Boatright*, 493 So. 2d 301, 311 (Miss. 1986).

¶50. The United States Supreme Court has re-examined the issue of punitive damages in *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed 2d 674 (2001). The Court determined that the jury's award of punitive damages is not a finding of fact, but rather is expression of moral condemnation, and thus de novo appellate review of that award is consistent with due process and does not impair the prevailing party's right to a jury trial. The Court further held that the factors to be considered when addressing whether punitive damage award is grossly disproportional to the gravity of the offense, thus violative of due process, are: (1) degree of defendant's reprehensibility or culpability; (2) relationship between penalty and harm to victim caused by defendant's actions; and (3) sanctions imposed in other cases for comparable misconduct. 532 U.S. at 424.

¶51. Returning to the case at bar and applying the *Cooper Indus.* factors to the facts previously mentioned above, there can be no doubt that this case is not a punitive damages case. Thornton's conduct, though improper, unnecessary, and in violation of the store policy, does not fall in the category of cases demanding punitive damages. That said, we turn to punitive damages assessed against Dollar General. Dollar General had an established written policy that the employee violated. No proof of knowledge by Dollar General of prior incidents committed by this employee was offered to the jury. Dollar General reprimanded Thornton and apologized to Gamble. Worse yet, the jury only found against Dollar General in assessing punitive damages. Clearly, punitive damages against Dollar General should not have been allowed. In my view, the trial court erred in doing so. I agree with the majority in reversing and rendering on punitive damages.

19

¶52.    I also agree with the majority's affirming the trial court's dismissal of Gamble's claim for fraud as there is no legal support for Gamble's civil claim concerning alleged misrepresentations occurring during discovery. Gamble's sole recourse is set out in M.R.C.P. 37 to which she has not availed herself.

¶53.    That said, I disagree with the majority's affirmance of the compensatory award of $75,000 against both Dollar General and Sheri Thornton. I, therefore, dissent in part.

¶54.    First, I disagree with the majority's affirming the jury's award of compensatory damages in the amount of $75,000 against both Sheri Thornton and Dollar General. It is my opinion, however, that Thornton's conduct was in violation of the established, written, Standard Operating Procedure Manual (SOP), policy of Dollar General. This action was not only a serious mistake but, also demonstrates a lack of common sense. Here, fortunately, there was no physical injury, and while Gamble should recover some compensatory damages because she was clearly an innocent shopper who was wrongfully touched by Thornton, nevertheless she should not have been awarded $75,000. The verdict evidenced bias and prejudice by the jury.

¶55.    It is obvious that the jury was allowed to hear voluminous evidence that should never have been heard due to the judge allowing several improper claims to proceed during Gamble's case-in-chief. This evidence clearly prejudiced the jury. The majority finds no harm or error regarding these claims. I respectfully disagree, as there is no way other than granting a new trial to correct these errors.

¶56.    Gamble suffered no physical injury, and her proof as to mental anguish is flimsy at best, certainly nothing which would warrant $75,000. She stated that she had trouble sleeping, that her grades dropped slightly for one semester following the incident, and that she had recently (just prior to trial) begun suffering from headaches. As to the first two claims, it was elicited on cross-examination that she broke up with a boyfriend within a few months of the incident. Additionally, it was established that she had previously been

20

treated for sleeplessness by a physician, whereas, after the incident at issue here she never was treated by a physician. Nor did she receive counseling or professional psychological help. No expert testimony supporting mental anguish was offered. As for the surprise headache testimony, it was error for the judge to allow this testimony at such a late date as she had not mentioned it during her deposition. No proof was offered to connect the recent headaches to the incident at bar.

¶57. It is true that "[i]f there is outrageous conduct, no injury is required for recovery for intentional infliction of emotional distress or mental anguish," *Adams v. U.S. Homecrafters, Inc.*, 744 So. 2d 736, 742 (Miss. 1999) (quoting *Smith v. Malouf*, 722 So. 2d 490, 497-98 (Miss. 1998)). This, however, does not mean that any plaintiff who gets on the stand and says I had trouble sleeping, and by the way, I now have headaches too, is entitled to damages for mental anguish. The standard has not dropped so low that the scant proof offered by Gamble warrants the damages awarded by this jury. This is particularly true when one considers the fact the jury was improperly allowed to hear substantial amount of prejudicial information which the trial court should never have allowed in the first place.

¶58. This Court has repeatedly held that minor, subjective claims of insomnia and serious anxiety cannot establish an emotional distress claim. *Adams,* 744 So. 2d at 743-44. In *Strickland v. Rossini*, 589 So. 2d 1268, 1275-76 (Miss. 1991), the Court again held that where the plaintiff was very depressed, upset and unable to sleep that such evidence was inadequate to sustain a proper claim for damages for emotional distress. Finally, in *Morrison v. Means*, 680 So. 2d 803, 806 (Miss. 1996), once again the Court held that an award for damages for mental anguish should be reversed where the plaintiff's claim was based on loss of sleep. In *Morrison* as well as the case at bar there was a lack of medical testimony to support claims for mental anguish.

¶59. Thus, it is clear that in order to properly establish mental anguish requires proof of deep emotional and psychological trauma. *Summers,* 759 So. 2d at 1211-12. This Court has clearly reasoned that our law requires only in those cases where a plaintiff has suffered significant emotional harm would damages be warranted. This is true because "mental anguish is a nebulous concept requiring substantial proof for recovery." *Morrison v. Means*, 680 So. 2d at 805-06. Gamble failed to prove mental anguish. I would reverse and remand for a new trial on the sole issue of the wrongful improper touching occurring in the parking lot.

¶60. The jury's verdict of compensatory damages against both Thornton and Dollar General, yet only assessing punitive damages against Dollar General is both astounding and contradictory. It defies reason, logic, and clearly evinces bias and prejudice on the part of the jury. In my view, several errors contributed to the excessive and improper verdict. First, the trial court erred in allowing the jury to consider negligent supervision by Dollar General. The court erred again in giving a criminal assault instruction and allowing counsel to repeatedly argue wrongful detention and defamation, when summary judgment had been sought pre-trial and denied. Finally, the jury should never have been allowed to consider punitive damages under the facts of this case.

¶61. Let us examine the plurality's view that Dollar General failed to provide additional training to its employees, thus reasons the majority, negligent supervision applies. This phase has been renamed by the plurality as, "no training whatsoever." Contrary to the plurality view, Dollar General had a very clear, concise, written policy included in its employee (SOP) manual which was given to every employee. Distributing a manual to employees and requiring them to read and abide by such manual is in fact, training. The policy stated, "**DO NOT LEAVE THE STORE TO FOLLOW A SUSPECTED SHOPLIFTER AND DO NOT TOUCH ANYONE**." Thornton admitted that she had read and

understood, yet ignored the policy in following Gamble out of the store, writing down her tag number, then confronting and touching her. Gamble and the majority argue that the policy was insufficient and more training was necessary. What is insufficient about the policy and what additional training was the jury told should be given? None. These statements are but broad allegations totally lacking in substance and proof. Gamble should have been required to offer expert testimony detailing what was insufficient, inadequate and negligent about Dollar General's policy and training. Also, specifics should have been given about what additional training was necessary. *See* M.R.E. 703; **Langston v. Kidder**, 670 So. 2d 1, 3 (Miss. 1995). What expert witness qualified in the field of retail business shoplifting procedures testified? No one. The policy is clear, concise, and easily understood; thus no additional training is required. A third grader could understand the words **DO NOT** simply mean **NO**. Thornton admitted that she read and understood the policy. She further testified that she, "should have followed it, and I didn't; and that when Gamble left the store, "I should have considered it over." Gamble thus failed to meet her burden of proof regarding what additional training Dollar General should have given its employees. In my view this error in allowing negligent supervision to be considered by the jury contributed significantly to the punitive damages award against Dollar General.

¶62.     Next, we consider the trial court's granting of Plaintiff's Jury Instruction 18, a criminal assault instruction which, in my view, further created bias and prejudice in the jury's verdict. The jury was instructed, inter alia "assault is an attempt to do bodily harm to inflict injury on another," "that Sheri Thornton attempted to do bodily harm or inflict injury on Heather Gamble." First, the instruction misstates the law. Second, and more importantly, there was simply no evidence adduced at trial that Thornton attempted to do bodily harm or inflict injury upon Gamble. Concerning the confrontation in the parking lot, Gamble testified that she first initiated the encounter by asking why Thornton was following her. Thornton

23

testified that she then asked Gamble to turn around and she would show Gamble. Thornton further testified that Gamble turned and that she took it as consent to touch the clothing to point it out. The record reflects that once Thornton grasped the bulge under Gamble's shirt and saw that it was her personal undergarment and not shoplifted merchandise, she immediately retreated. Thornton stated that she apologized to Gamble. Gamble then began to shout loudly at Thornton. The trial court erred in granting this type criminal assault instruction based on absolutely no testimony in support thereof.

¶63. Gamble charged false arrest, wrongful detention and defamation/slander. The defendants unsuccessfully attempted to have the court grant summary judgment on these claims. Prior to trial, the trial court dismissed the false arrest claim, but allowed the wrongful detention claim to proceed. The defendants ultimately were granted a directed verdict on the wrongful detention claim. However, the damage was already done due to extensive prejudicial and irrelevant evidence placed before the jury during Gamble's case-in-chief. Additionally, the defamation/slander claims whereby Gamble, through numerous witnesses, offered testimony of supposed harm to her reputation and the resultant humiliation she suffered through publication of the incident clearly prejudiced the jury in spite of a directed verdict ultimately being granted. *See* **Rush v. Scott Speciality Gases, Inc.**, 113 F.3d 476 (3d Cir. 1997) (evidence submitted on one claim can have an improper effect on another claim). It is undisputed that Thornton never uttered any words accusing Gamble of shoplifting even though Thornton thought that indeed shoplifting had occurred. Gamble assumed an accusation of shoplifting by Thornton due to Thornton's "angry look on her face." Nor was there any publication of the incident to a third party by Thornton or Dollar General. There were no other eyewitnesses to the incident, thus, only Gamble or Thornton knew what happened. The record reflects that Thornton did not publish the event to anyone other than to police who questioned her about it after Gamble reported the incident to the police department. It was solely Gamble and her family who

24

publicized the incident to others. There was simply no way that Gamble could prove these claims in spite of numerous witnesses paraded before the jury. In fact, when the dust settled, no witness had testified of any harm to Gamble's reputation. In my view, the result would have been vastly different had the jury only been allowed to consider the lone incident of Thornton wrongfully touching Gamble in the parking lot.

¶64. I respectfully concur as to the majority's affirmance of the dismissal of Gamble's fraud claim and its reversal and rendering of punitive damages, but dissent as to all other issues regarding compensatory damages. I would reverse the judgment for compensatory damages and remand this case for a new trial as to the liability and compensatory damages on the sole issue of the wrongful touching of Gamble in the parking lot.

**WALLER, COBB AND CARLSON, JJ., JOIN THIS OPINION.**